SUSAN J. KUBIAN *et al.*, Plaintiffs-Appellants, v. HAROLD C. LA-BINSKY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 87—2495

Opinion filed September 23, 1988.

Gordon & Gordon, Ltd., of Chicago (Lawrence G. Gordon, of counsel), for appellants.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Michael G. Bruton, of counsel), for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiffs, Susan and Richard Kubian, appeal from the dismissal of their medical malpractice action against defendant, Dr. Richard Labinsky, as a sanction under Supreme Court Rule 219(c) (107 Ill. 2d R. 219(c)) for failing to comply with certain discovery orders entered pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220).

On April 4, 1983, plaintiffs instituted a medical malpractice action against Dr. Labinsky, a surgeon, Dr. L.P. Concannon, a radiologist, and Alexian Brothers Medical Center. The record reveals that Alexian Brothers Medical Center was dismissed from the action by an agreed order entered on January 22, 1986, and that Dr. Concannon's motion for summary judgment was granted on July 30, 1987. Plaintiffs have appealed only from the order granting Dr. Labinsky's motion to dismiss and, thus, while we include references to Alexian Brothers Medical Center and Dr. Concannon herein for purposes of presenting an understandable, chronological review of the facts, this appeal concerns only the propriety of the order dismissing defendant Labinsky.

In their two-count complaint, plaintiffs alleged that as a result of various negligent acts and omissions by each of the original defendants, Susan underwent an unnecessary surgical procedure performed

by Dr. Labinsky at Alexian Brothers Medical Center on May 18, 1981, to remove what had been diagnosed as a tumor but was ultimately determined to be a benign growth on the anterior portion of her skull.

Alexian Brothers filed its answer on May 19, 1983, and on August 1, 1983, the trial court granted Dr. Concannon's motion to dismiss the complaint, without prejudice, and allowed plaintiffs leave to file an amended complaint. Service of summons on defendant was accomplished by special process server on June 3, 1985, and on June 28 and July 17, respectively, he served plaintiffs with interrogatories and filed his answer to the complaint. The initial pretrial conference, originally scheduled for April 8, 1985, was then continued to February 26, 1986. On November 7, 1985, plaintiffs filed answers to defendant's interrogatories but, in response to the inquiry regarding the identity of their expert witness, stated "unknown at this time." On January 30, 1986, defendant served plaintiffs with supplemental interrogatories, pursuant to Rule 220, concerning the identity, qualifications and conclusions of any expert witnesses expected to testify at trial. At the pretrial hearing on February 26, 1986, the trial court entered an order requiring plaintiffs to disclose their expert witness by March 21 and to present him for deposition by May 15. Defendant's expert was to be identified by July 1 and deposed by August 15. The final pretrial conference was set for September 11.

On July 22, 1986, defendant filed a motion to dismiss the action under Rule 219(c) for plaintiffs' failure to comply with the order of February 26, and on that same date the parties entered into an agreed order allowing plaintiffs 14 additional days—to August 5—to disclose their expert. At the hearing on September 11, the trial court denied defendant's motion to dismiss and ordered that the case be continued to April 14, 1987, and that plaintiffs were to respond to defendant's Rule 220 supplemental interrogatories within seven days and make their expert available for deposition by October 1. Defendant subsequently filed two more motions to dismiss—on September 12 and October 3. According to the parties, plaintiffs' counsel represented to the trial court at a hearing on October 3 that he had sent a letter to defense counsel naming an expert witness, but defense counsel denied having received it. The trial court then ordered plaintiffs to produce any letters sent to defense counsel identifying their expert, together with the expert's *curriculum vitae*, to respond to the supplemental interrogatories by October 10, and to produce the expert for deposition by November 15 or thereafter be barred from presenting expert testimony at trial.

On November 12, defendant filed another motion to dismiss, argu-

ing, generally, that plaintiffs had failed to comply with the court's previous orders and, specifically, that plaintiffs' counsel did not produce the letter referred to at the October 3 hearing but, rather, drafted a letter dated October 10 and mailed October 21—which was attached as an exhibit—in which he provided the name and a summary of the professional credentials of their expert, Dr. John Baron, and stated that he would be produced for a deposition prior to November 15, at which time his full *curriculum vitae* would be provided. At the conclusion of that hearing, the trial court entered and continued defendant's motion to dismiss to December 1, directed defendant to submit a statement of fees and costs for the preparation of the motion, ordered plaintiffs to produce their expert's *curriculum vitae* by November 19, answer the supplemental interrogatories by December 15 and present the expert for a deposition no later than January 7, 1987. On December 24, an agreed order was entered by another trial court judge continuing a motion for summary judgment filed by Dr. Concannon to February 24, 1987. Defendant's motion to dismiss was also continued, first to December 19 and then to January 13, 1987.

On that date, the trial court awarded defendant the amount of fees stated in the report thereof, ordered plaintiffs to provide answers to the supplemental interrogatories and their expert's medical report, "if available," on or before January 27, and to present him for a deposition by February 8, and, finally, continued the motion to February 9, 1987. According to the parties, when plaintiffs' attorney appeared at the hearing on February 9, he represented to the court that Dr. Baron had decided not to testify as an expert at trial. The trial court then entered an order stating:

> "Based on the representations of plaintiffs' counsel that plaintiffs' previously identified expert, Dr. Baron has refused to appear as an expert witness, and such fact was not known to plaintiffs' counsel until the later portion of the week of February 2, 1987, leave is granted to plaintiffs to disclose their expert and to answer Rule 220 Supplemental Interrogatories by 2/23/87 and to produce said expert by 3/15/87."

The court also ordered plaintiffs' counsel to set forth under oath a response to defendant's motion to dismiss by February 21 and continued the motion to March 27, 1987.

On that date, Dr. Concannon also presented a motion to dismiss to the same trial judge before whom defendant's motion to dismiss was pending. The trial court entered and continued both motions for a hearing on May 28 "to occur after the next scheduled hearing on defendant Concannon's motion for summary judgment," awarded fees

to defendant for that day's hearing, and ordered plaintiffs to supply answers to the supplemental interrogatories and the expert's medical report "if any" by May 1, 1987. On April 14, the trial court continued the pretrial hearing to May 28.

On April 30, plaintiffs filed a "notice of emergency motion" to extend the time, to June 12, to name an expert. In it, counsel asserted that on March 20, 1987, Dr. Baron advised plaintiffs that he would be unable to continue to act as a medical expert in this case; that they had contacted and sent the medical records to a doctor in Florida but that there would be insufficient time for him to review those records, obtain any additional information he might require, discuss his opinions with counsel and write a report before the May 12 hearing on Dr. Concannon's motion for summary judgment. In response thereto, defendant filed another motion to dismiss and a memorandum in support thereof, in which he alleged that plaintiffs had made material misrepresentations to the court in order to obtain extensions of time and enumerated the various court orders with which they had failed to comply. Following a hearing, the trial court granted plaintiffs' motion for an extension of time until May 21, awarded fees to defendant, and ordered plaintiffs to respond to defendant's motion to dismiss, stating:

"Plaintiffs' prior attorney has left the employ of plaintiffs' law firm due to personal reasons. Although that fact does not relieve the responsibility of that law firm to respond to the Motion to Dismiss as ordered by the Court on 2/9/87, and such response shall be filed by 5/21/87, although it need not be 'under oath' as previously ordered for the reason that the prior plaintiffs' attorney was the only attorney with personal knowledge."

The order also provided that defendant's motion was continued until May 28, 1987. On May 7, the trial judge before whom Dr. Concannon's motion for summary judgment was pending ordered plaintiffs to respond to the motion by June 8 and set July 10 as the date for the hearing thereon.

On May 28, the trial court entered orders (1) barring plaintiffs from naming an expert in their case against Dr. Concannon and (2) granting defendant's motion to dismiss with prejudice. Plaintiffs filed a motion for reconsideration and an allowance of time to obtain additional experts, in which the named partner of the firm stated under oath that the attorney with responsibility for the case following the original attorney's departure from the firm was newly admitted and had failed to adequately present plaintiffs' version of the facts to potential experts; that after the order of dismissal, he (the senior part-

ner) had reviewed the file and, realizing what had occurred, contacted Dr. Baron, who submitted a report in the form of an affidavit, which was attached to the motion. In it, Dr. Baron stated, in substance, that having reviewed all of the medical records, it was his opinion, for reasons specified in the affidavit, that defendant had misdiagnosed the growth on Susan's head as a malignant tumor and that the surgery performed on her by him was unnecessary and ill-advised. On July 28, 1987, the trial court denied the motion, and on July 30, Dr. Concannon's motion for summary judgment was granted. This appeal, from the order of dismissal, followed.

OPINION

Supreme Court Rule 219(c) provides that where a party unreasonably refuses to comply with discovery rules or orders, the trial court may enter "such orders as are just," imposing sanctions on the noncomplying party (107 Ill. 2d R. 219(c)). The rule contains a nonexclusive list of sanctions which the trial court may impose, including, *inter alia*, a stay of the proceedings, the barring of testimony, the striking of claims or defenses, the awarding of fees and costs, the institution of contempt proceedings, entry of a default judgment and dismissal of the action. The imposition of sanctions is a matter largely within the discretion of the trial court and should not be disturbed on review unless the order constitutes an abuse of discretion (*Nehring v. First National Bank* (1986), 143 Ill. App. 3d 791, 493 N.E.2d 1119; *Cedric Spring & Associates, Inc. v. N.E.I. Corp.* (1980), 81 Ill. App. 3d 1031, 402 N.E.2d 352), such as where the record shows that the party's conduct was not unreasonable or where the sanction itself is not just (*Nehring v. First National Bank* (1986), 143 Ill. App. 3d 791, 493 N.E.2d 1119; *In re Estate of Fado* (1976), 43 Ill. App. 3d 759, 357 N.E.2d 195). Since the purpose of such sanctions is to effect discovery, not to punish the dilatory party (*Jones v. Healy* (1981), 97 Ill. App. 3d 255, 422 N.E.2d 904), a "just order" under Rule 219(c) is one which, to the degree possible, insures both the accomplishment of discovery and a trial on the merits (*White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 398 N.E.2d 24). For these reasons, default judgment or dismissal of the action, being the most drastic sanctions, are ones which courts are reluctant to impose, which should be imposed only as a last resort (*White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 398 N.E.2d 24) in cases where the actions of the party demonstrate a deliberate, contumacious and unwarranted disregard of the trial court's authority (*In re Application of County Treasurer* (1986), 150 Ill. App. 3d 696, 502 N.E.2d 268;

*Gayton v. Levi* (1986), 146 Ill. App. 3d 142, 496 N.E.2d 1045; *Big Three Food & Liquor, Inc. v. State Farm Fire & Casualty Co.* (1979), 79 Ill. App. 3d 63, 398 N.E.2d 264; *Hoover v. University of Chicago Hospitals* (1977), 51 Ill. App. 3d 263, 366 N.E.2d 925), all other enforcement powers at the court's disposal have failed to advance the litigation *(Jaffe v. Fogelson* (1985), 137 Ill. App. 3d 961, 485 N.E.2d 531; *White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 398 N.E.2d 24), and which may be set aside where a trial on the merits could be had without hardship or prejudice *(Nehring v. First National Bank* (1986), 143 Ill. App. 3d 791, 493 N.E.2d 1119; *Hagensee v. Jeffrey Galion, Inc.* (1981), 93 Ill. App. 3d 675, 417 N.E.2d 733; *Humboldt-Armitage Corp. v. Illinois Fair Plan Association* (1980), 86 Ill. App. 3d 888, 408 N.E.2d 307; *Cedric Spring & Associates, Inc. v. N.E.I. Corp.* (1980), 81 Ill. App. 3d 1031, 402 N.E.2d 352; *Jones v. Healy* (1981), 97 Ill. App. 3d 255, 422 N.E.2d 904; *White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 398 N.E.2d 24). However, once the trial court imposes a sanction for noncompliance, the sanctioned party has the burden of establishing that the noncompliance was reasonable or justified by extenuating circumstances or events. *Cedric Spring & Associates, Inc. v. N.E.I. Corp.* (1980), 81 Ill. App. 3d 1031, 402 N.E.2d 352.

Relying primarily on *Cometo v. Foster McGaw Hospital* (1988), 167 Ill. App. 3d 1023, 522 N.E.2d 117, plaintiffs contend that the trial court abused its discretion by (a) imposing the most severe sanction of dismissal, the purpose and effect of which was to punish them rather than to accomplish discovery and (b) refusing to vacate that order and reopen discovery on the basis of a change in circumstances.

In *Cometo*, a medical malpractice action against a hospital and a physician which was also filed in April 1983, the plaintiff appealed from an order (1) striking the affidavit of an expert presented after a July 26, 1986, order barring him from introducing expert testimony at trial as a sanction for failing to comply with several orders requiring the disclosure and deposition of the expert, (2) refusing to reopen discovery for the purpose of deposing the parties' experts, and (3) granting summary judgment for defendants. In that case, the first order setting a discovery schedule was entered in April 1985. It required, *inter alia*, that plaintiff's expert be disclosed by August 1 and deposed by September 1, but plaintiff did not comply therewith. At the next pretrial conference on November 20, the trial court entered a second order requiring disclosure by January 7, 1986, and continued the matter to April 3. In a letter dated January 6, plaintiff identified his expert, and defendants thereafter filed a notice for his deposition

to be taken on February 21. Sometime before the deposition, however, plaintiff informed defendant's counsel that the expert had refused to testify. At the April 3 pretrial conference, the court entered another order requiring plaintiff's expert to be disclosed and deposed by April 18 and May 16, respectively, and set the final pretrial conference for July 23. On that date, the trial judge granted the defendants' motion to bar plaintiff from calling any "undisclosed and unidentified experts at trial" (167 Ill. App. 3d at 1026) as a sanction for his noncompliance with the various discovery orders and returned the case to the trial call for September 10. On August 8, defendants filed separate motions for summary judgment which were later amended to attach the necessary affidavits of their experts. Plaintiff filed a response to the motions attached to which was the counteraffidavit of the expert who had previously refused to testify. The trial judge before whom the motion was being argued sent the parties back before the judge who had entered the sanction order of July 23 for clarification of its scope. A clarification order was issued, stating that " '[t]his court's orders of July 23, 1986 shall be construed as a bar to plaintiff from calling any expert witness to testify at the trial of this cause on his behalf.' " (167 Ill. App. 3d at 1027.) Plaintiff then alternatively moved to either (a) bar the affidavits of the hospital's expert—a doctor who had not previously been named as an expert but who had been deposed as an occurrence witness—and the defendant-physician—who had not been deposed, or (b) reopen discovery for the limited purpose of deposing all of the experts. The trial court granted the hospital's motion for summary judgment, allowed the physician leave to withdraw and refile an amended motion for summary judgment, in support of which he attached his own affidavit, and subsequently granted the amended motion on the ground that absent expert medical testimony, plaintiff could not meet his burden of proving negligence.

On appeal, the plaintiff did not dispute the propriety of the initial order of dismissal but, rather, argued that the renewed willingness of his expert witness to testify and the agreed six-month continuation of the trial date constituted changed circumstances justifying the denial of summary judgment and the reopening of discovery. Noting the obstacle often faced by plaintiffs in malpractice actions stemming from the reluctance of members of the medical profession to testify against each other (*Sanders v. Frost* (1969), 112 Ill. App. 2d 234, 251 N.E.2d 105), the *Cometo* court agreed that in the light of the changed circumstances, plaintiff's noncompliance with the discovery orders did not rise to the level of contumacious disregard of the trial court's orders

to warrant the barring of the expert's testimony which resulted in summary judgment for defendants.

The court also took note of the six-month continuation of the trial date and the allowance of additional time for the physician to amend his motion for summary judgment and stated that because Rule 220 requires only that discovery concerning expert witnesses be completed not later than 60 days prior to trial, the purpose of Rule 220 would not have been thwarted by the reopening of discovery—particularly since the time allowed the physician to amend his motion for summary judgment could have been utilized, instead, to depose the expert witnesses. Thus, the *Cometo* court also determined that defendants would have suffered no prejudice by vacatur of the order barring plaintiff's expert witness and therefore reversed the orders of summary judgment and remanded the cause for further proceedings.

In the instant case, plaintiffs maintain that, as in *Cometo*, the renewed willingness of their expert witness to testify after his earlier refusal to do so and the submission of his affidavit constituted a sufficient change in circumstances to warrant vacatur of the May 28 order of dismissal, which they concomitantly assert was, in the light of all the circumstances, an unduly harsh sanction imposed primarily as a punishment. They further argue that because no trial date had yet been set, defendant would not have been prejudiced had discovery been reopened so as to proceed with the taking of depositions of the parties and their experts and the completion of any other discovery matters.

Defendant responds that "the record is silent on justification or reasons" for plaintiffs' noncompliance with the numerous discovery orders entered between February 26, 1986, and May 28, 1987. In particular, he argues that plaintiffs have waived their claim that the dismissal order should have been vacated on the grounds of a change in circumstances because they did not assert any such change as the basis for their motion to vacate in the trial court and that, in any event, there is no evidence in the record that after first agreeing to testify Dr. Baron then refused and then "agreed once again" to support such a claim. Indeed, defendant suggests that plaintiffs' counsel made "one or more misrepresentations to the trial court about the availability of Dr. Baron" and concludes that since the record is, at best, silent as to "what actually occurred," the only reasonable inference which can be drawn is that plaintiff's conduct amounted to a deliberate and contumacious disregard of the court's authority.

Notwithstanding the difficulty often faced by plaintiffs in securing expert witnesses willing to testify in medical malpractice

actions, it is our view that the dilatory and noncooperative conduct of plaintiffs' counsel—by whose actions plaintiffs are bound (*Big Three Food & Liquor, Inc. v. State Farm Fire & Casualty Co.* (1979), 79 Ill. App. 3d 63, 398 N.E.2d 264)—was the very type which places significant burdens on courts struggling to handle the backlog of pending litigation (see, *e.g., Castro v. South Chicago Community Hospital* (1988), 166 Ill. App. 3d 479, 519 N.E.2d 1069), which is being denounced by trial and reviewing courts alike with increasing frequency (see, *e.g., Transamerica Insurance Group, Inc. v. Lee* (1987), 164 Ill. App. 3d 945, 518 N.E.2d 413) and which the sanctions provided for in Rule 219(c) and recently made applicable to Rule 220 violations (see 107 Ill. 2d R. 219(c), Committee Comments, at 350-51) were designed to address.

The record discloses, for example, that plaintiffs' first attorney did not comply even with that portion of the court's February 26, 1986, order requiring him to name an expert witness until approximately eight months later when, in a letter dated October 10 but postmarked October 21 (and which he earlier claimed had been sent on October 3), he named Dr. Baron as the expert and provided his address and a brief summary of his educational background and professional credentials. Additional delays resulted from the noncompliance with orders entered on October 3, November 12 and January 13, 1987, requiring responses to defendant's supplemental interrogatories concerning the expert's opinions and the bases thereof and the production of Dr. Baron for deposition.

It is undisputed, however, that in February 1987, plaintiffs' counsel informed the court, as is reflected in the order entered February 9, that earlier in the week Dr. Baron had informed him of his decision not to testify. The trial court ordered plaintiffs to secure another expert and to answer the supplemental interrogatories within two weeks, and the attorney was ordered to respond under oath to defendant's motion to dismiss as a sanction for discovery violations. The time in which to answer the supplemental interrogatories and to supply a medical report "if any" was subsequently extended to May 1 and a hearing was set for May 12. At some point during this period, however, the attorney who had been handling plaintiffs' case left the firm, and on April 30, another attorney in the firm presented an emergency motion requesting an extension, to June 12, to name an expert. In support thereof, that attorney stated that on or about March 20, it was learned that Dr. Baron would not continue to act as a medical expert in the case and that although the medical records had been sent to a named doctor in Florida, he would be unable to

review the records, obtain whatever additional information he might need, consult with counsel concerning his opinions and prepare a report in time for the May 12 hearing. In its order, the court noted that "[p]laintiffs' prior attorney has left the employ of plaintiffs' law firm due to personal reasons" and granted an extension of the time to respond to the supplemental interrogatories to May 21, rather than June 12 as counsel had requested, and, for the third time, ordered plaintiffs' law firm to pay defendant's fees and costs. A few days later plaintiffs were also ordered by the judge before whom Dr. Concannon's motion for summary judgment was pending to respond to the motion by June 8 and to appear at a July 10 hearing thereon; but on May 28, the trial judge hearing the motions to dismiss barred plaintiffs from introducing expert testimony against Dr. Concannon—whose amended motion for summary judgment was ultimately granted on the basis thereof—and granted defendant's motion to dismiss. Shortly thereafter, the senior partner in plaintiffs' law firm filed a motion to vacate in which he stated under oath that after being made aware of the dismissal order he contacted Dr. Baron, who prepared a report in the form of an affidavit. In it, he (Dr. Baron) stated his opinion, and the bases therefore, that defendant's failure to review certain X rays taken of Susan's skull resulted in a misdiagnosis of her condition and the performance upon her of unnecessary and ill-advised surgery. The record contains no transcript of the hearing on this motion, which was denied.

We are not unsympathetic with the very able trial judge, whose fair and patient attempts to compel discovery were repeatedly frustrated by unexplained noncompliance with his orders. Nevertheless, considering that in the few months preceding dismissal, counsel for plaintiff did apprise the court that the expert who had been identified several months earlier refused to testify; that the attorney who had been primarily responsible for the case during the period when the majority of the discovery violations occurred had left the firm; and that the medical records had been sent to a prospective expert named in the emergency motion for an extension to June 12 by the attorney who assumed responsibility for the case after the previous attorney's departure, we are constrained to agree that plaintiffs' noncompliance with the court's orders did not rise to the level of deliberate, contumacious disregard for the court's authority to warrant dismissal of the action. That is not to say that sanctions were not appropriate in this case. To the contrary, sanctions were clearly necessary and proper. The record discloses, however, that prior to dismissal, the only sanction imposed by the trial court was to order plaintiffs' law firm to

pay the relatively nominal fees and costs incurred by defendant relating to his motions to dismiss. Thus, the court had other means of enforcement under Rule 219(c) at its disposal, and, in our view, could have imposed progressively harsher sanctions proportionate to the gravity of the violations to compel discovery rather than exercising its discretion in such a way as to dispose of the litigation in the pretrial stage. See *Jaffe v. Fogelson* (1985), 137 Ill. App. 3d 961, 485 N.E.2d 531.

Moreover, even assuming, *arguendo*, that dismissal had been the only feasible sanction available at the time it was ordered, since the affidavit given by Dr. Baron and attached to the sworn motion to vacate together with the summary of his credentials supplied to defendant eight months earlier contained most of the general information sought by defendant in the supplemental interrogatories, and because there is no indication in the record of an impending trial date, we cannot see sufficient prejudice to defendant in this case as to justify overriding the primary objectives of Rule 219 to accomplish discovery and proceed to a trial on the merits. (See *Jones v. Healy* (1981), 97 Ill. App. 3d 255, 422 N.E.2d 904.) We believe that, when presented with the motion to vacate, the court should have balanced the interests of all the litigants by fashioning an order fair to defendant but also designed to expeditiously accomplish discovery, such as—but not limited to—one imposing additional sanctions and/or conditioning vacatur of the dismissal order and the reinstatement of the case on plaintiffs' full compliance with the remaining discovery orders within a reasonable period of time. See *White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 398 N.E.2d 24.

For the reasons stated, we reverse the order dismissing this action and remand the cause to the trial court for further proceedings.

Reversed and remanded.

LORENZ, P.J., and MURRAY, J., concur.