# Illinois Official Reports

## Appellate Court

***Fraser v. Jackson*, 2014 IL App (2d) 130283**

| | |
|---|---|
| Appellate Court Caption | WILLIAM FRASER, Plaintiff-Appellee, v. JOHN JACKSON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0283 |
| Filed | March 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the entry of a judgment for plaintiff in an action arising from a vehicular collision, the appellate court held that the trial court did not abuse its discretion in barring defendant's expert medical witness from testifying due to defendant's failure to comply with discovery orders concerning the witness, that plaintiff laid a proper foundation for certain medical bills, and that assessing defendant with the costs plaintiff incurred in obtaining evidence to support those medical bills when defendant denied plaintiff's request to admit that evidence pursuant to Supreme Court Rule 216 was not an abuse of discretion, and the appellate court imposed sanctions on defendant pursuant to Supreme Court Rule 375 for the fees and costs incurred by plaintiff in defending defendant's frivolous appeal. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-L-727; the Hon. Christopher C. Starck, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Robert S. Wilson, of Vernon Hills, for appellant. |
| | |
| | Nathan J. Mirocha and Samuel J.H. Weyers, both of Law Offices of Nathan J. Mirocha LLC, of Chicago, for appellee. |
| | |
| | |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Spence concurred in the judgment and the opinion. |

**OPINION**

¶ 1      Plaintiff, William Fraser, sued defendant, John Jackson, for damages resulting from a motor vehicle collision that occurred on September 4, 2009, in Zion, Illinois. After a jury trial, plaintiff was awarded damages in the amount of $61,372.43, which included medical expenses of $31,372.43. In this appeal, defendant raises three issues: (1) whether the trial court erred in barring his expert witness, Dr. Gary Skaletsky, from testifying at trial; (2) whether plaintiff laid a proper foundation for admitting certain of his medical expenses into evidence; and (3) whether the trial court erred in awarding costs and attorney fees to plaintiff. Additionally, plaintiff asserts that this appeal is frivolous and warrants sanctions pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). We affirm, with sanctions.

¶ 2      I. BACKGROUND

¶ 3      The record on appeal consists of a four-volume common-law record; one supplemental common-law record; and one report of proceedings that includes: (1) plaintiff's attorney's closing argument to the jury on November 14, 2012; and (2) the hearing on various posttrial motions held on February 13, 2013. The following facts are gleaned from the record.

¶ 4      On September 4, 2009, defendant was driving a dump truck east on 9th Street in Zion, while plaintiff was driving a pickup truck south on Green Bay Road. Plaintiff had the right of way. Defendant failed to stop at the stop sign on 9th Street at Green Bay Road and struck plaintiff's vehicle. As a result, plaintiff suffered injuries to his lower back, neck, head, and knee.

¶ 5      On August 30, 2011, plaintiff sued defendant, seeking damages for the injuries he received. The complaint alleged that defendant's negligence caused plaintiff to suffer permanent injuries and sought damages in excess of $50,000.

¶ 6      On July 31, 2012, plaintiff issued supplemental production requests to defendant concerning Dr. Skaletsky, a neurosurgeon retained by defendant to evaluate plaintiff pursuant to Illinois Supreme Court Rule 215 (eff. Mar. 28, 2011). Plaintiff requested documents and other material, including correspondence, reports and invoices from Dr. Skaletsky that were

submitted to defendant's counsel and his insurance company. Plaintiff also requested deposition transcripts from any matters in which Dr. Skaletsky had previously served as a retained expert for defendant's counsel or his insurance company.

¶ 7    Also on July 31, plaintiff issued a subpoena *duces tecum* to Dr. Skaletsky, requesting any reports, correspondence, and income records generated since 2007 by his acting as a medical expert or consultant; transcripts of any deposition or trial testimony he had given since 2007; and any scholarly work authored by himself or others that he relied upon in forming an opinion in this case. Plaintiff also requested copies of all medical records provided by attorneys to Dr. Skaletsky concerning a prior McHenry County case in which he was involved as an expert witness.

¶ 8    On July 31, pursuant to Rule 215, the trial court ordered plaintiff to be examined by Dr. Skaletsky as a medical opinion witness. In a letter dated August 3, 2012, Dr. Skaletsky, citing physician-patient privilege, informed plaintiff's counsel that he would not comply with the discovery requests contained in the subpoena *duces tecum*. On August 13, Dr. Skaletsky examined plaintiff and reviewed medical records and diagnostic imaging studies from the day of the accident. Dr. Skaletsky's written report was dated August 13. On August 17, pursuant to Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2007), defendant disclosed Dr. Skaletsky as a "Controlled Expert Witness." On August 29, defendant noticed up his evidence deposition of Dr. Skaletsky for November 2.

¶ 9    In a letter dated September 12, defendant's counsel tendered to plaintiff's counsel Dr. Skaletsky's response, dated August 3, to the subpoena *duces tecum*; Internal Revenue Service 1099 forms for 2008 through 2011; and a list of payments made to Dr. Skaletsky from 2008 through 2011.

¶ 10   On September 17, pursuant to Illinois Supreme Court Rule 216 (eff. Jan. 1, 2011), entitled "Admission of Fact or of Genuineness of Documents," plaintiff filed his requests to admit that certain charges were for reasonable and necessary treatment and that the charges were fair, reasonable, and customary. The bills included were, *inter alia*, for services rendered to plaintiff from Vista Medical Center East, Aurora Medical Group, Aurora Healthcare, Aurora Medical Group Imaging, and Wheaton Franciscan Medical Group. In his answer filed September 28, defendant denied all of these requests to admit.

¶ 11   On October 17, 24 and 31, the trial court ordered defendant to produce the materials requested in the subpoena *duces tecum*. The order issued on October 31 set a deadline for compliance, at 5 p.m. on November 1. The trial court ordered Dr. Skaletsky to produce all correspondence and reports that he authored, or were authored on his behalf, since 2007 in his capacity as medical consultant or expert; all invoices and billing statements generated since 2007 by, or on behalf of, Dr. Skaletsky in his capacity as medical consultant or expert; and all correspondence, reports, invoices, and billing statements sent by, or on behalf of, Dr. Skaletsky to defendant's lawyers or his insurance company. That order also provided:

> "(4) If the materials are not produced in a timely manner, Dr. Skaletsky shall produce his tax returns from 2008-2011[.]"

On the morning of November 1, defendant filed a motion for a protective order "related to the income, and, [*sic*] income tax information of [Dr. Skaletsky]." The trial court granted the motion and ordered that all information and documents received by plaintiff pertaining to Dr. Skaletsky's income and income tax returns would be "limited in its use to the cause within."

¶ 12        On November 4, defendant's counsel faxed to plaintiff's counsel Dr. Skaletsky's income tax returns from 2007 through 2011. On November 6, because plaintiff had not received any of the correspondence or reports requested in the subpoena *duces tecum*, plaintiff filed an emergency motion seeking to bar Dr. Skaletsky from testifying. The trial court granted the emergency motion as a discovery sanction, pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002).

¶ 13        On November 8, defendant's counsel filed a motion to reconsider barring Dr. Skaletsky's testimony and argued:

    "Judge, I believe that the plain meaning of the court's order was that if the doctor did not turn over those documents; the invoices, and, I believe, the reports from the other cases, then he was to then turn over the tax returns.

    If the court had contemplated barring Dr. Skaletsky just for not producing the documents in the subpoena rider, then it would serve no purpose for him to turn over tax returns because there was a protective order entered that they could only be used in this case."

The trial court denied the motion to reconsider, stating:

    "[T]he purpose of the tax returns is because he didn't want to give his billing stuff. If it was just a billing thing, I would agree with you. But it's also the reports and other things and that is much more concerning to me because now how can he cross examine the [doctor] if he said the same thing in every case."

¶ 14        On November 13, just before the trial commenced, defendant filed a single document entitled "Motions *in limine*," which sought rulings on 24 separate evidentiary issues. In the seventeenth of the 24 motions, defendant sought to prevent, from the parties, counsel, and any testifying witnesses:

    "any testimony, remark, statement or inference regarding any medical bills that plaintiff claims to have incurred unless the following are established: Medical bills are only admissible into evidence if plaintiff can establish that the charges are reasonable and that they were necessarily incurred due to defendant's negligence. *Baker v. Hutson*, 333 Ill. App. 3d 486, 494 *** (2002). Unless the Plaintiff calls a previously disclosed witness who will testify that his medical bills were reasonable and necessary, and, that the bills are for treatment causally related to this accident, plaintiff should not be allowed to offer such testimony at trial."

The trial court granted this motion immediately before the trial commenced.

¶ 15        Dr. Sara Mangiardi was the emergency room physician who treated plaintiff at Vista Medical Center East on the day of the accident. She testified via an evidence deposition that plaintiff arrived at the hospital by ambulance. He complained of pain in his back, neck, and left leg. Dr. Mangiardi examined plaintiff and took X-rays of his left foot and left knee. She also ordered a CT scan of plaintiff's head and cervical spine. She diagnosed plaintiff as having soft tissue strain of his lower back and neck and contusions (bruises) to the head and knee. Dr. Mangiardi testified that, in her opinion, the accident caused the injuries. Upon discharge from the emergency room, plaintiff was instructed to follow up with his primary physician, Dr. Kenneth Margulies. Dr. Mangiardi identified plaintiff's exhibit No. 7 as a copy of the bill for emergency services. She also testified that the treatment plaintiff received was reasonable and necessary.

¶ 16 Dr. Joseph Paukner, family practice physician with the Aurora Medical Center, testified in an evidence deposition that he treated plaintiff from September 2009 through January 2010, when he referred plaintiff to Dr. Subbanna Jayaprakash of the Wheaton Franciscan Medical Group in Racine, Wisconsin. The referral was necessitated by plaintiff's lack of progress in his treatment. Dr. Paukner testified that plaintiff's injuries and pain were caused by the accident and that all of the treatment he provided was reasonable and necessary. He further testified that he saw plaintiff five times between September 14, 2009, and January 6, 2010, and that the charges were reasonable and customary for the services provided.

¶ 17 Dr. Subbanna Jayaprakash testified that he specialized in physical medicine and rehabilitation, a subspecialty of internal medicine. He saw plaintiff for the first time in February 2010, after Dr. Paukner referred plaintiff to him. He stated that plaintiff had a 50% reduction in range of motion in his neck. He stated that this deficit was permanent and required plaintiff to restrict his physical activities. Dr. Jayaprakash observed bruising on plaintiff's knee, and an MRI showed swelling, with no injury to the tendons. Dr. Jayaprakash prescribed continued physical therapy and muscle-relaxant and anti-inflammatory medications. Plaintiff returned for follow-up two months later, in April 2010, and again in June 2010 and September 2010. After that point, Dr. Jayaprakash saw plaintiff approximately every six months. Dr. Jayaprakash opined that, from the accident in September 2009, plaintiff sustained injuries to his neck, mid-back, lower back, and left knee. Dr. Jayaprakash opined that all of the treatment provided was reasonable and necessary.

¶ 18 Plaintiff's bills for medical expenses in the amount of $44,369.11 were admitted into evidence. The portion incurred from Aurora Healthcare totaled $34,246.51, itemized as follows: radiologist (MRI), $705.00; MRI (neck), $4,985.96; MRI (right knee), $2,690.00; and physical therapy, $25,864.95. After defendant refused to stipulate that the bills for these medical services were fair, reasonable, and customary charges for the services provided, an Aurora Healthcare billing representative testified via telephone. In order to accomplish this, plaintiff was required to open a case in Wisconsin pursuant to Wisconsin statute and enlist the services of a Wisconsin law firm to serve the summons.

¶ 19 The record reflects that the jury returned a verdict for plaintiff in the amount of $61,372.43, which represented medical expenses of $31,372.43 plus $30,000 for pain and suffering. Judgment on the verdict was entered on November 14, 2012. Plaintiff filed posttrial motions as follows: a motion pursuant to Illinois Supreme Court Rule 219(b) (eff. July 1, 2002) for fees and costs expended to secure the trial testimony of the Aurora Healthcare billing representative; a motion for a new trial on the question of damages; a motion for *additur*, seeking to increase the amount awarded for medical expenses to the full amount of $44,369.11 sought by plaintiff; and a motion for costs, pursuant to statute (735 ILCS 5/5-108 (West 2010)) and Illinois Supreme Court Rule 208(d). On February 13, 2013, the trial court granted plaintiff's motion for fees and costs expended relative to the Aurora Healthcare billing representative; denied the motion for a new trial as to damages; denied the motion for *additur*; and granted the motion for costs.

¶ 20 Also on February 13, defendant's motion for a new trial, filed December 12, was denied. Defendant timely appealed.

## II. ANALYSIS

As the appellant, defendant "has the burden of presenting a sufficiently complete record of the proceedings at trial to support a claim of error." *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 319 (2003) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). Illinois Supreme Court Rule 323 (eff. Dec. 13, 2005) mandates that the record on appeal contain a report of the trial court proceedings, consisting of a transcript or, if no transcript is available, a bystander's report or an agreed statement of facts. In order to conduct a thorough review of the judgment in this case, and truly evaluate the court's conclusions, this court would need to examine either a transcript of the trial or a bystander's report or an agreed statement of facts. Neither a transcript nor any alternative has been provided. In the absence of a complete record, the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392. "In fact, when the record on appeal is incomplete, a reviewing court should actually 'indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including that the trial court ruled or acted correctly.' " *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 757-58 (2006) (quoting *People v. Majer*, 131 Ill. App. 3d 80, 84 (1985)).

Additionally, Illinois Supreme Court Rule 341(h)(3) (eff. Feb. 6, 2013) requires the appellant to include a "concise statement of the applicable standard of review for each issue, with citation to authority, either in the discussion of the issue in the argument or under a separate heading placed before the discussion in the argument." In his brief, defendant presents a section entitled "Standard of Review" that states: "[t]he applicable standard-of-review for assessment of sanctions related to discovery matters is abuse of discretion" (citing *Kapsouris v. Rivera*, 319 Ill. App. 3d 844 (2001)). Conspicuously absent is any standard of review that would apply to defendant's other two arguments.

We caution defendant to be mindful of the rules that have been established in order to provide meaningful and expeditious review of issues presented. The rules of procedure concerning appellate briefs are rules, not mere suggestions, and failure to comply with the rules is not an inconsequential matter. See *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7.

However, despite these shortcomings, we elect to consider the merits of defendant's claims.

### A. Medical Opinion Testimony

Defendant argues that Dr. Skaletsky should not have been barred from testifying. Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2007) provides:

> "(f) Identity and Testimony of Witnesses. Upon written interrogatory, a party must furnish the identities and addresses of witnesses who will testify at trial and must provide the following information:
>
> * * *
>
> (3) *Controlled Expert Witnesses*. A 'controlled expert witness' is a person giving expert testimony who is the party, the party's current employee, or the party's retained expert. For each controlled expert witness, the party must identify: (i) the subject matter on which the witness will testify; (ii) the conclusions and opinions of

the witness and the bases therefor; (iii) the qualifications of the witness; and (iv) any reports prepared by the witness about the case."

¶ 28    Rule 219 (c) contains a nonexclusive list of sanctions that the trial court may impose, including the barring of testimony, for failing to comply with discovery rulers or orders. *Kubian v. Labinsky*, 178 Ill. App. 3d 191, 196 (1988). Specifically, Rule 219(c)(iv), establishing "Consequences of Refusal to Comply with Rules or Order Relating to Discovery," provides:

> "(c) Failure to Comply with Order or Rules. If a party, or any person at the instance of or in collusion with a party, unreasonably fails to *** comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:
>
> * * *
>
> (iv) That a witness be barred from testifying concerning that issue[.]" Ill. S. Ct. R. 219(c)(iv) (eff. July 1, 2002).

Further, "[t]he imposition of sanctions under Rule 219 is committed to the sound discretion of the circuit court, and its determination will not be reversed absent a clear abuse of that discretion." *Dolan v. O'Callaghan*, 2012 IL App (1st) 111505, ¶ 54.

¶ 29    The purpose of any such sanction is to "effect discovery, not punish a dilatory party." *Kubian*, 178 Ill. App. 3d at 196. "Where a party fails to comply with the provisions of Rule 213, a court should not hesitate sanctioning the party, as Rule 213 demands strict compliance." (Internal quotation marks omitted.) *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 110 (2004).

¶ 30    Paraphrasing plaintiff, the issue presented in this case is whether the trial court abused its discretion when it barred defendant's controlled expert witness because defendant "continuously and systematically disregarded" the trial court's multiple orders to produce discovery. We do not believe that this is an overstatement. By retaining Dr. Skaletsky as an expert witness, defendant was subject to the requirements of Rule 213. On three separate occasions, the trial court ordered defendant to comply with plaintiff's subpoena *duces tecum*. After several weeks, the trial court finally ordered defendant to produce Dr. Skaletsky's income tax returns as additional discovery that could establish bias or prejudice, if defendant did not comply by the deadline of 5 p.m. on November 1. It was not until November 6 that the trial court granted plaintiff's emergency motion to prevent Dr. Skaletsky from testifying. On November 8, the trial court denied defendant's motion to reconsider. At any point during these events, defendant could have complied with discovery and avoided the sanction imposed.

¶ 31    Defendant argues that Dr. Skaletsky's income tax information was more than sufficient to demonstrate whether there was bias. However, defendant ignores the trial court's explanation that the "reports and other things" were much more concerning because plaintiff's ability to effectively cross-examine Dr. Skaletsky was substantially impaired. It is worth noting that Dr. Skaletsky had numerous years of experience testifying in such matters and, consequently, would have been familiar with production requirements. See *New v. Pace Suburban Bus Service*, 398 Ill. App. 3d 371, 387 (2010).

¶ 32    Citing *Kubian* and *Kapsouris*, defendant asserts that, since there was no finding of contumacious delay on the part of Dr. Skaletsky, the sanction imposed was excessively severe and prejudicial. We do not agree. In *Kubian*, a medical malpractice case, the appellate court reversed the trial court's grant of summary judgment to the defendant doctor, finding that the trial court "had other means of enforcement under Rule 219(c) at its disposal" and could have imposed "progressively harsher sanctions *** to compel discovery" rather than disposing of the litigation at the pretrial stage. *Kubian*, 178 Ill. App. 3d at 202. Such is not the case here, where barring Dr. Skaletsky was one of the least harsh sanctions contemplated by the *Kubian* court.

¶ 33    Further, we find *Kapsouris* inapposite. This court in *Kapsouris* held that the trial court abused its discretion when it found that the plaintiff violated discovery rules and, as a sanction, excluded opinion testimony. *Kapsouris*, 319 Ill. App. 3d at 852. In *Kapsouris*, the issue presented was whether the disclosure of opinion witnesses in response to a Rule 213(g) interrogatory is required where the same disclosure is made pursuant to Illinois Supreme Court Rule 222 (eff. Jan. 1, 2011), entitled "Limited and Simplified Discovery in Certain Cases."[1] The plaintiff in *Kapsouris* had disclosed all opinion witnesses in the Rule 222 disclosures. This court noted that the information required to be disclosed regarding opinion witnesses was the same under either Rule 213 or Rule 222 and that "it made little difference" under which rule the plaintiff's opinion witnesses were disclosed. *Kapsouris*, 319 Ill. App. 3d at 851. Therefore, the trial court's sanction of excluding the plaintiff's opinion testimony was an abuse of discretion. Such is not the case here.

¶ 34    Defendant's argument on this issue fails where the trial court's order was clear on its face and the trial court further explained the order when it ruled on the motion to reconsider. Defendant has failed to establish that the court's rationale was incorrect or that the sanction was an abuse of discretion.

¶ 35                                    B. Medical Bills

¶ 36    Defendant complains that the Aurora Medical Center bills should not have been admitted into evidence. In his motion *in limine*, he sought to prevent any "testimony, remark, statement or inference regarding any medical bills that plaintiff claims to have incurred" unless "plaintiff calls a previously disclosed witness who will testify that his medical bills were reasonable and necessary, and, that the bills are for treatment causally related to this accident." This motion was granted by the trial court immediately prior to trial. As to whether a contemporaneous objection was made by defendant at trial when plaintiff introduced these medical bills, we have no record of the trial proceedings that might (or might not) reflect such an objection. The parties in their briefs present us with conflicting statements.

¶ 37    "The purpose of an objection is not only to preserve an issue for appeal, but to bring the potential error to the trial court's attention so that it may be contemporaneously addressed." *Pister v. Matrix Service Industrial Contractors, Inc.*, 2013 IL App (4th) 120781, ¶ 78. A defendant must object to an error at trial and also include it in a written posttrial motion to

---

[1]Since *Kapsouris*, Rule 222, which applies to all cases subject to mandatory arbitration and to civil actions seeking money damages not in excess of $50,000, has been amended, but the amendments do not affect our analysis.

preserve an issue on appeal. *Thornton v. Garcini*, 237 Ill. 2d 100, 106 (2010) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). As stated above, we will presume that the trial court's decisions had a sufficient factual basis and were in conformity with the law, and we will resolve any doubts that arise from the incompleteness of the record against defendant as the appellant. See *Thompson v. Buncik*, 2011 IL App (2d) 100589, ¶ 15.

¶ 38    Forfeiture aside, we find that a proper foundation for the medical bills was established. "Evidentiary motions, such as motions *in limine*, are within the trial court's discretion and are reviewed under an abuse of discretion standard." *Citibank, N.A. v. McGladrey & Pullen, LLP*, 2011 IL App (1st) 102427, ¶ 13.

¶ 39    Defendant argues that *Baker v. Hutson*, 333 Ill. App. 3d 486 (2002), establishes a bright-line rule that requires a showing that expenses sought to be admitted were necessarily incurred because of the injuries resulting from the defendant's negligence and that the charges were reasonable for services of that nature. In this case, the treating doctors did testify that the charges incurred were a direct result of the injuries that plaintiff suffered in the accident. Dr. Paukner prescribed physical therapy, ordered an MRI of plaintiff's neck, and followed up with plaintiff to monitor his progress. Dr. Jayaprakash treated plaintiff for the same injuries, prescribing continued physical therapy and medications. Dr. Jayaprakash opined that plaintiff's injuries were caused by the accident. Further, a billing representative from Aurora Healthcare testified via telephone that she had reviewed the charges and that they were customary and reasonable for the services rendered. Obviously, the treating physicians could not opine as to the cause of the accident itself; neither could the billing representative attest to the causal relationship between the accident and the treatment. However, defendant admitted his negligence in causing the accident, and the only disputed issue for the jury as fact finder was whether the treatment was necessary for injuries that plaintiff suffered because of the accident. The following quote from *Baker* is informative:

> "In this case, based upon the evidence and reasonable inferences, a jury could have reasonably concluded that plaintiff was not injured to the extent claimed, that some of the treatment she received was unwarranted or excessive, and that the charges for some of the treatment were unreasonable. Alternatively, a jury could have reasonably concluded that plaintiff was injured in the accident, that her condition resulted from the collision, that some or all of the treatment provided was necessary, and that some or all of the charges for the treatment were reasonable. Thus, the issues of causation and damages were ones of fact and not of law." *Id.* at 497.

¶ 40    Defendant cites *Land & Lakes Co. v. Industrial Comm'n*, 359 Ill. App. 3d 582, 591 (2005), a workers' compensation decision that reversed the medical expenses award for the claimant and remanded the cause for another hearing on the reasonableness of the medical expenses. The only foundational testimony for the medical bills came from the claimant himself, who testified that he received the bills and that, to the best of his knowledge, most of the balances remained unpaid. In its ruling, the *Land & Lakes* court stated, "The foundation for admitting medical bills could, for example, be established through the deposition testimony of the treating physicians or through the testimony of an employee of the medical practice who is familiar with the practice's billing methods and the reasonableness of the charges." *Id.* That case actually supports our ruling and not defendant's argument.

¶ 41 Therefore, we determine that the trial court did not abuse its discretion when it admitted the bills into evidence.

¶ 42                                        C. Costs and Attorney Fees

¶ 43 Defendant's third and final argument is that the trial court erred in awarding plaintiff costs and attorney fees of $4,032, pursuant to Rule 219(b). This amount represented the costs of securing the testimony of the Aurora Healthcare billing representative. Plaintiff's pretrial motion included a request to admit pursuant to Rule 216 that the Aurora Healthcare bills were for reasonable and necessary treatment and that the charges were fair, reasonable, and customary.

¶ 44 The purpose of a Rule 216 "Admission of Fact or of Genuineness of Documents" request is not to discover facts. *Szczeblewski v. Gossett*, 342 Ill. App. 3d 344, 349 (2003). Rather, the purpose of such a request is to establish some of the material facts in a case without the necessity of formal proof at trial. *Id.* This enables the parties and the court to limit the issues and it results in substantial savings of time and expense, for both the parties and the court. *Id.*; *McGrath v. Botsford*, 405 Ill. App. 3d 781, 790 (2010).

¶ 45 "The amount of medical expenses a plaintiff incurred as a result of an event, the necessity and reasonableness of medical services, and the fair reasonable cost of medical services rendered are all proper subjects for requests to admit." *Troyan v. Reyes*, 367 Ill. App. 3d 729, 739 (2006). "[A] party has a good-faith obligation to make a reasonable effort to secure answers to requests to admit from persons and documents within the responding party's reasonable control." *Szczeblewski*, 342 Ill. App. 3d at 349.

¶ 46 Defendant claims that the trial court erred when it awarded these costs and attorney fees pursuant to Illinois Supreme Court Rule 219(b) (eff. July 1, 2002), which provides:

> "(b) Expenses on Refusal to Admit. If a party, after being served with a request to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial thereof, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter of fact, the requesting party may apply to the court for an order requiring the other party to pay the requesting party the reasonable expenses incurred in making the proof, including reasonable attorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made."

A defendant has an affirmative obligation under Rule 219 to admit or deny requested admissions *in good faith* or, if a requested admission is improper due to privilege, form, or any other reason, to file an objection within the 28 days given for responding, pursuant to Rule 216(c). See *McGrath*, 405 Ill. App. 3d at 791. Under the rules, if a plaintiff can show that the defendant has not complied with these affirmative obligations, the plaintiff may obtain reasonable expenses under Rule 219(b), "regardless of whether [the defendant] had the 'intent to obstruct' the progress of the litigation." *Id.*

¶ 47 The trial court clearly stated in its ruling that defendant lacked good faith:

> "I believe that the plaintiff having to jump through hoops with the Aurora people was unnecessary, so I'm going to award that as costs. So all of your expenses for securing

the Aurora [billing representative] and the subpoenas and things like that, those will all be added to your costs."

¶ 48    In his reply brief, defendant argues that he "did not lack good reason to deny the facts asserted." He states that he had already been informed of his own expert's opinion that the treatment by the Aurora Medical Center was not related to the accident. He also states that he chose not to take discovery depositions of Dr. Jayaprakash and Dr. Paukner and therefore did not know that plaintiff's doctors "could offer required testimony regarding medical expenses." We fail to understand exactly what defendant thought the nature of plaintiff's doctors' testimony would be other than the cause of plaintiff's injuries, the nature of their diagnoses, and the necessity of their prescribed treatment. Defendant's argument ignores the fact that the award was for the amount expended to secure the billing representative's testimony. He also ignores the trial court's rationale for imposing the award: its finding that defendant's refusal to admit was not in good faith. Further, his argument on this issue is based on the mistaken assumption that plaintiff did not establish a foundation for the admission of the medical expenses (see *supra* ¶¶ 33-39). We find no abuse of discretion here.

¶ 49    D. Sanctions

¶ 50    Plaintiff asks that this court award him attorney fees and costs associated with defending this appeal. Defendant responds that "barring Dr. Skaletsky was a severe sanction, which greatly prejudiced the defendant in presenting a defense at trial." This reiteration of defendant's first meritless argument is pointless and merely restates the obvious. Not lost on this court is defendant's failure to respond to plaintiff's other assertions, *i.e.*, that defendant's second and third arguments do not find any support in the record or in case law, although he states that plaintiff is taking a " 'kill-the messenger' approach."

¶ 51    Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) allows us to impose an appropriate sanction upon a party or a party's attorney if:

> "it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose."

The purpose of Rule 375(b) is to condemn and punish the abusive conduct of litigants and their attorneys who appear before us. *Sterling Homes, Ltd. v. Rasberry*, 325 Ill. App. 3d 703, 709 (2001). Defendant's failure to refute plaintiff's points merely underscores the frivolity of this entire appeal.

¶ 52    The following quotation aptly expresses our view of this appeal:

> "We find that this appeal, viewed as a whole, was frivolous, that it was taken for an improper purpose, and that it was filed specifically to harass and to cause unnecessary delay and needlessly increase the cost of litigation. We choose to impose sanctions for this conduct, finding that cases like this drain valuable resources intended to benefit those who accept the social contract of living under a law-based system of government." *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 88.

¶ 53    We agree with plaintiff that sanctions should be imposed against defendant for filing a frivolous appeal. Since plaintiff has not yet done so, we direct plaintiff to file within 14 days

- 11 -

a statement of reasonable expenses and attorney fees incurred as a result of this appeal. Defendant and his attorney shall have seven days to file a response. This court will then file a supplemental opinion determining the amount of the sanction, which will be imposed upon defendant and his attorney.

¶ 54                                    III. CONCLUSION

¶ 55        Accordingly, the judgment of the circuit court of Lake County is affirmed, with sanctions.

¶ 56        Affirmed.