**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240645-U

Order filed October 15, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* PARENTAGE OF | ) | |
| | ) | Appeal from the Circuit Court |
| D.O. and P.O. | ) | of the 18th Judicial Circuit, |
| | ) | Du Page County, Illinois, |
| (CHRISTIE CAPALETY, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Circuit No. 22 FA 549 |
| | ) | |
| v. | ) | |
| | ) | Honorable |
| DOMINIC O'NEILL, | ) | Robert E. Douglas, |
| | ) | Judge, Presiding. |
| Respondent-Appellant). | ) | |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Presiding Justice Brennan and Justice Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The court did not abuse its discretion in determining child support arrearage or allocating shared expenses.

¶ 2     Christie Capalety petitioned for child support from Dominic O'Neill, seeking support and contribution to educational and extracurricular expenses from 2022 to 2024. Following a hearing, the court determined O'Neill's income based on his bank records and set an arrearage based on

the parties' respective incomes. The court also allocated shared expenses for education and extracurricular activities. O'Neill appealed the circuit court's findings.

¶ 3                                                I. BACKGROUND

¶ 4        Capalety petitioned for child support on September 21, 2022. She sought support for the parties' two children, P.O. and D.O. following O'Neill's departure from their shared home in March of 2022. Following an exchange of discovery, the case proceeded to hearing on June 17, 2024. At that time, both the parties' children had been emancipated, and the court was tasked with (1) determining the amount of child support owed between 2022 and 2024 and (2) allocating educational and extracurricular expenses between the parties. At the hearing, Capalety testified that she worked as a property manager and received an annual salary of $140,000 per year. She described her children's interest in hockey, which was encouraged by O'Neill, and she observed that as the children got older the expenses associated with hockey grew larger. She submitted pay records and a financial disclosure outlining what she paid in hockey expenses. Those expenses included, among other things, travel fees, equipment, league fees, tournament fees, and private training. Capalety testified to paying roughly $15,000 in travel fees, equipment fees in excess of $1,000, and the majority of the club fees for 2023 and 2024. She stated that O'Neill cut off all financial support when he left.

¶ 5        O'Neill testified he was self-employed as a contractor. He did not file tax returns for the previous ten years, but on his financial affidavit he disclosed around $119,000 in gross income receipts for 2022 and $118,000 for 2023. He admitted that for at least one client he charged an hourly rate of $65 per hour. He also testified that he was "reimbursed for meals and a company car" and stated that he entered into a barter agreement with his attorney. O'Neill failed to disclose or produce at trial any balance sheets, tax returns, or profit and loss statements for his

2

business, and he admitted to commingling his personal and business accounts. He charged personal expenses to his business account and generally failed to distinguish between business and personal expenses. O'Neill estimated his income to be $42,000 per year. He testified that he paid some of the hockey expenses, although his testimony on the subject was inconsistent. At one point, he testified that the cost of hockey was "$25,000 a kid not counting travel."

¶ 6        On July 22, 2024, the court issued a written ruling, finding O'Neill's testimony with respect to his income not to be credible and determined his income by "averaging the extrapolated income based on deposits to his bank accounts and his hourly wage income." The court ruled that O'Neill's income for child support purposes for the relevant period was $173,150.02 per year. The court found that Capalety's income was $140,000 per year, but it incorporated additional income for 2023 based on the sale of stock and the settlement of a lawsuit. The court ordered the parties to prepare child support calculations based on its findings. Further, the court found that Capalety paid $24,0685 for hockey expenses between 2022 and 2024, and the court ordered O'Neill to pay half that amount.

¶ 7        Following the judgment, O'Neill filed tax returns for 2022 and 2023. O'Neill then moved to reconsider the court's judgment, arguing the court should adjust its child support calculations based on the gross income claimed on his tax returns. He also requested that the court account for hockey fees O'Neill paid between 2022 and 2023. The court denied O'Neill's motion to reconsider, and this appeal followed.

¶ 8                                        II. ANALYSIS

¶ 9        As an initial matter, Capalety has requested we strike O'Neill's brief and dismiss the appeal for failing to comply with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). Specifically, O'Neill failed to include in the appellate record the exhibits introduced at trial,

including the bank statements upon which the court relied in determining his income for child support purposes. Rule 341(h)(6) requires appellants to state the facts necessary for an understanding of the case, and Rule 341(h)(9) requires the attachment of an appendix that complies with Rule 342, which in turn requires appellants to include "any pleadings or other materials from the record that are the basis of the appeal or pertinent to it." Ill. S. Ct. R. 341(h); Ill. S. Ct. R. 342 (eff. Oct. 1, 2019). Although O'Neill has filed this appeal *pro se*, "[a] *pro se* litigant is held to the same standards as a litigant represented by an attorney." *Williams v. Department of Human Services Division of Rehabilitation Services*, 2019 IL App (1st) 181517, ¶ 30. "Arguments that do not comply with Rule 341(h) do not merit consideration on appeal and may be rejected by this court for that reason alone." *Wells Fargo Bank, N.A. v. Sanders*, 2015 IL App (1st) 141272, ¶ 43.

¶ 10        Nonetheless, we elect to review the record for O'Neill's claimed errors, which are: (1) the court's failure to properly calculate his income for child support purposes, and (2) the misallocation of hockey expenses, given that O'Neill paid some expenses between 2022 and 2024. We review issues of child support and the determination of child support arrearages for an abuse of the court's discretion. *In re Marriage of Schomburg*, 2016 IL App (3d) 160420, ¶ 19. "The findings of the trial court as to net income and the award of child support are within its sound discretion and will not be disturbed on appeal absent an abuse of discretion*." In re Marriage of Breitenfeldt*, 362 Ill. App. 3d 668, 675 (2005). An abuse of discretion occurs when no reasonable person would take the view adopted by the court. *In re Marriage of Carpenter*, 286 Ill. App. 3d 969, 973 (1997).

¶ 11        On appeal, the appellant bears the burden of presenting a sufficiently complete record to support his claims of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). When the record

4

on appeal is incomplete, a reviewing court may "indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including that the trial court ruled or acted correctly." (Internal citations and quotations omitted.) *Fraser v. Jackson*, 2014 IL App (2d) 130283, ¶ 22.

¶ 12      Based on the record provided, we find that the court did not abuse its discretion in determining O'Neill's income or in allocating hockey expenses between the parties. Income, for the purposes of calculating child support, includes any gain or recurrent benefit, which is usually, but not always, measured in money. *In re Marriage of Rogers*, 213 Ill. 2d 129, 136-37 (2004). It includes payments and benefits that would not otherwise be considered taxable income. *In re Marriage of Moorthy and Arjuna*, 2015 IL App (1st) 132077, ¶ 38. The income O'Neill testified to earning was inconsistent with respect to (1) his own testimony, (2) the expenses and lifestyle of the parties, and (3) the documentary evidence. Moreover, "[w]here a party fails to produce evidence in his control, the presumption arises that the evidence would be adverse to that party." *REO Movers, Inc. v. Industrial Commission*, 226 Ill. App. 3d 216, 223 (1992).

¶ 13      Here, there was very little reliable direct evidence produced at trial to calculate O'Neill's income. The absence of that evidence was largely due to O'Neill's failure to keep records or produce records prior to the trial. The court therefore utilized O'Neill's bank statements and the hourly wage he testified he earned to calculate his income. We cannot conclude that the court abused its discretion in so doing. See *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 74 (in the absence of credible evidence of income, the court may be required to order reasonable support by making inferences from the testimony and evidence presented).

¶ 14      In determining net income, the court was correct to consider O'Neill's credibility and forthrightness in disclosing his income. *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 109

5

(2000). The bank statements upon which the court based its decision here were not made part of the appellate record. However, the record does include O'Neill's admission to having charged an hourly rate in the past, which was used, in part, to calculate his income. The appellate record does not contain the bank statements on which the court also relied, and we reiterate that, to the extent the record is insufficient to support a claim of error, "it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d 389, 391-92.

¶ 15 With respect to the hockey expenses, O'Neill's own testimony on the subject was that hockey expenses significantly exceeded the amount for which Capalety requested to be reimbursed. We find no evidence in the record that the court failed to account for the amounts paid by O'Neill in allocating hockey expenses. We therefore do not find that the court abused its discretion in awarding Capalety hockey expenses.

¶ 16                                    III. CONCLUSION

¶ 17 The judgment of the circuit court of Du Page County is affirmed.

¶ 18 Affirmed.