No. 2-09-0235     Filed: 11-5-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER J. McGRATH, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant and Cross-Appellee, | ) | |
| | ) | |
| v. | ) | No. 03--MR--900 |
| | ) | |
| STEPHEN F. BOTSFORD, | ) | |
| | ) | Honorable |
| Defendant-Appellee and | ) | Kenneth L. Popejoy, |
| Cross-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the opinion of the court:

This case involves a lawsuit between two people who once sought to do business together. During the pendency of the suit, the defendant, Stephen F. Botsford, served the plaintiff, Christopher J. McGrath, with a request for admissions of fact pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216). McGrath failed to respond within 28 days. Six months later, McGrath sought, and the trial granted, leave to file late responses to the request for admissions. McGrath then denied all of the facts set forth in the request for admissions. In deposition and at trial years later, however, McGrath admitted many of these facts. Ultimately, following a bench trial, the trial court ruled in Botsford's favor. Botsford then filed a motion pursuant to Supreme Court Rule 219(b) (210 Ill. 2d R. 219(b)) for an award of reasonable expenses, including attorney fees, in connection with McGrath's wrongful denials of facts contained in the request for admissions. The trial court denied the motion and, after McGrath appealed the judgment, Botsford cross-appealed the denial of his Rule 219(b) motion.

McGrath's appeal was dismissed for want of prosecution, and thus the cross-appeal is the sole issue before us. Botsford argues that the trial court abused its discretion when it denied his motion for reasonable expenses, including attorney fees. We reverse and remand.

The events giving rise to this appeal are as follows. In February 2001, McGrath, while employed by Insurance Auto Auctions (IAA), referred a potential land acquisition, the Laurel Canyon Project (the Project), to Botsford. In April 2001, McGrath and Botsford met in Botsford's home to discuss the possibility of a joint venture to explore various real estate opportunities in California, including the Project. There were no specific terms of agreement discussed at this meeting. Between April 2001 and October 2001, McGrath and Botsford made three trips together to California. During this time, no written partnership agreement was demanded or drafted by either party. In July 2001, Turnberry Financial Group, Ltd., a company wholly owned by Botsford, executed a letter agreement with the owner of the Laurel Canyon property in regard to the proposed acquisition of the property. The letter agreement allowed Turnberry to assign its rights under the agreement to a newly formed limited liability corporation to be named Laurel Canyon Holdings (LCH). As of October 2001, Botsford was the only member of LCH.

In October 2001, Botsford prepared a draft operating agreement for LCH, which proposed a 51% ownership interest for Botsford and a 49% interest for McGrath. On November 28, 2001, McGrath expressly rejected the terms of the proposed agreement and countered with a proposal for 50%-50% ownership. On December 5, 2001, the parties met at a restaurant to discuss the terms of the operating agreement, and both agreed to accept a 51%-49% ownership structure. They memorialized their agreement on a loose piece of paper with notes on it, signed by both. Thereafter, the parties continued to communicate in their efforts to write up their agreement. Botsford wrote McGrath, and McGrath struck out portions of the letter and made additions. On December 9, 2001,

Botsford instructed his attorney to make revisions to the proposed operating agreement. On January 2, 2002, Botsford sent a letter to McGrath with another draft of the operating agreement, retaining the 51%-49% ownership distribution and including other terms. Although McGrath forwarded this draft to his attorney and Botsford then incorporated the changes into a revised draft, on January 12, 2002, McGrath rejected the revised draft and proposed his own changes. The parties subsequently had a telephone conversation in which McGrath advised Botsford that he did not agree with the final language proposed by Botsford. Botsford responded by advising McGrath that negotiations regarding the operating agreement were at an end and that any future relationship with McGrath would be in the form of a consulting agreement. McGrath rejected such a consulting role, and there were no further attempted agreements.

On March 6, 2002, McGrath filed suit against Botsford in the circuit court of Cook County, seeking a declaration that a contract existed between Botsford and McGrath with respect to the Project and that Botsford and McGrath had agreed to form a partnership pursuant to which each would own 50% of the Project. On February 21, 2003, the action was transferred to the circuit court of Du Page County.

On October 6, 2003, Botsford served McGrath with various items of written discovery, including a request to admit facts pursuant to Rule 216, which contained 29 statements (the Request). The statements that are relevant to this appeal include the following:

"3. That discussions regarding the Laurel Canyon Project were initiated in or before February of 2001.

4. That discussions regarding the Laurel Canyon Project were initiated before the formation of the alleged partnership between you and Botsford.

* * *

9. That you were employed by Insurance Auto Auctions at the time that Defendant was negotiating for the purchase of the property constituting the Laurel Canyon Project.

\*\*\*

11. That your consulting job with Insurance Auto Auctions was terminated in September of 2001.

12. That the first drafts of Operating Agreements for Laurel Canyon Holdings, LLC and Sun Valley Holdings, LLC were first drafted in late October of 2001.

13. That such first drafts of the Operating Agreements proposed a 51% ownership interest by Defendant Botsford and 49% ownership interest by you.

14. That you sent a letter via e-mail to Defendant Botsford on November 28, 2001 wherein you rejected the terms of the first drafts of the Operating Agreements, proposing instead that you be given a 50% ownership interest.

15. That Defendant Botsford sent you a letter dated December 5, 2001 wherein Defendant Botsford rejected your proposal of a 50% ownership interest and restated that you were being offered only a 49% ownership interest.

16. That Defendant Botsford sent a second draft of the proposed Operating Agreement for Laurel Canyon Holdings, LLC to you via e-mail on January 2, 2002.

17. That such second draft of the Operating Agreement for Laurel Canyon, LLC again proposed a 51% ownership interest by Defendant Botsford and 49% ownership interest by you.

18. That you sent a letter to Defendant Botsford via e-mail on January 12, 2002 rejecting the second draft of the Operating Agreement for Laurel Canyon Holdings, LLC and

proposing instead the terms set forth in the draft Operating Agreement attached to your email.

19. That Defendant Botsford informed you via telephone on January 16, 2002 that he was no longer interested in negotiating the Operating Agreements pursuant to which you would be a member of Sun Valley Holdings, LLC and Laurel Canyon Holdings, LLC and that any relationship with you would be in the form of a consulting agreement.

\* \* \*

25. That you informed Defendant Botsford on or about January 25, 2002 that you were not interesting in entering into a consulting agreement with Defendant Botsford."

McGrath did not file or serve timely responses to any of the written discovery. In March 2004, Botsford moved to compel answers to the interrogatories and document production requests, and to deem the statements in the Request admitted. On May 6, 2004, the trial court entered an order granting the motion to compel in part but permitting McGrath to file a late response to the Request. McGrath's sole response to each statement in the Request was "denied." McGrath never sought to amend or supplement his responses.

In July 2004, Botsford moved for summary judgment, arguing that McGrath sought to enforce an alleged oral agreement that came within the statute of frauds (740 ILCS 80/1 (West 2002)), which bars the enforcement of certain oral contracts, including those for which performance could not be completed within one year, that McGrath himself admitted, in sworn answers to interrogatories, could not be performed within one year. Briefing on the motion was delayed while McGrath filed an amended complaint in August 2004 and then sought leave to file a second amended complaint in January 2005 (leave was denied). The amended complaint sought a declaratory judgment that McGrath was a 49% member in LCH and that the terms and conditions of the parties'

December 5, 2001, agreement constituted the operating agreement; an order for accounting; an award to McGrath for damages resulting from Botsford's alleged breach of his fiduciary duty to McGrath; the imposition of a constructive trust on the property of LCH and the appointment of a receiver; and a judgment enforcing McGrath's partnership rights. McGrath's amended complaint also alleged that Botsford and McGrath entered into an agreement to jointly conduct a business venture as partners for the purpose of developing real estate in California, that they held themselves out as equal partners in the venture beginning in April 2001, and that each partner would be responsible for his own expenses. McGrath further alleged that on December 5, 2001, he and Botsford prepared a handwritten agreement to modify the operating agreement and that this was the agreement that governed their relationship.

McGrath filed a response to the motion for summary judgment in May 2005. Among other things, he argued that, even if the statute of frauds applied, he satisfied the "substantial performance" exception to the statute of frauds because he "had invested substantial time, effort and money into the project without any compensation." In support, McGrath attached his affidavit, in which he stated that he and Botsford "researched and reviewed several development opportunities beginning *** about April, 2001," and that "at the time [he] was involved with this venture" he devoted his "full time and effort to the business." On June 22, 2005, the trial court found that all of McGrath's claims were subject to the statute of frauds but denied the motion for summary judgment, finding that McGrath had raised an issue of fact as to whether he had partially performed his obligations under the alleged agreement to such an extent that he met the partial performance exception to the statute of frauds. McGrath was deposed on October 21, 2005. In his deposition, he testified that he worked full-time for IAA through April 2001, when the company underwent a reorganization. He was hired as a consultant for IAA almost immediately upon being laid off, however, and worked

in that capacity until September or October 2001. He worked as a consultant for IAA on five projects (a sixth project was added part way through this period) and spent "several hours" per month on each project. In his deposition, McGrath also admitted that his denial of requested admission No. 9 (which asserted that he was employed by IAA at the time that Botsford "was negotiating for the purchase of the property constituting Laurel Canyon") was false and that he should have admitted that statement. As to requested admissions Nos. 13, 14, 15, 16, 17, 18, 19, and 20 (which asked McGrath to verify the date and content of various draft operating agreements and other correspondence that was exchanged between the parties during the fall of 2001), McGrath testified that he did not recall why he denied them. When asked with respect to several of these requested admissions whether he currently had any basis to deny them, McGrath did not answer but instead reiterated that he did not recall his "thinking" at the time he responded to the Request. Thereafter, Botsford filed a renewed motion for summary judgment (again based on the statute of frauds), but it was denied.

The case proceeded to a bench trial on July 18, 2008, and the trial court heard approximately five days of testimony. In August 2008, Botsford filed a motion pursuant to Rule 219(b) to recover his reasonable expenses, including attorney fees, related to McGrath's alleged wrongful denial of certain statements contained in the Request. Botsford attached to his motion excerpts from transcripts of the trial and various depositions. (The record contains full transcripts of the depositions excerpted, but does not include full transcripts of the trial.)

On September 17, 2008, the trial court issued a letter opinion in which it found that McGrath was not a member of LCH and that McGrath and Botsford did not enter into a partnership "in any general or specific sense of the word," and entered judgment in Botsford's favor on all claims. In summarizing the evidence at trial, which consisted primarily of the parties' testimony, the trial court

noted that the parties met in December 2001 and appeared to agree on terms that would govern their relationship. (This was presumably the December 5, 2001, agreement that McGrath, in his amended complaint, alleged represented the parties' complete agreement.) The trial court stated:

"Had everything stopped at that point and there had been no further negotiations or the like this Court might have found, that based upon all the facts and circumstances surrounding the formation of the relationship at issue, that the parties intended a partnership to exist. Yet what transpired following Mr. Botsford's letter of acknowledgment to Mr. McGrath clearly showed, without question, that a meeting of the minds in respect to a formation of an alleged partnership had in fact not occurred." (Emphasis in original.)

The trial court noted that, in response to a draft agreement prepared by Botsford, McGrath countered by crossing off some of the terms and proposing new terms, and that each party then continued to reject various provisions requested by the other and to exchange revised drafts before eventually deciding that they could not reach an agreement. As to the parties' credibility, the trial court stated that, after viewing their demeanor while testifying, it "found Mr. McGrath's testimony to be far less believable and in fact impeached on a number of occasions." (Emphasis in original.) In particular, the trial court noted that "Mr. McGrath testified that he gave his full time and effort to the alleged partnership/joint venture agreement with Botsford yet acknowledged during [sic] consulting work with IAA and overseeing five construction projects during the same time frame."

Thereafter, the parties briefed and argued Botsford's motion for Rule 219(b) expenses. On January 30, 2009, the trial court denied the motion. In explaining its reasons for the denial, the trial court stated:

"I think some things [requests to admit] weren't of substantial importance. I think some things required a proof to come in. Some things I think were required for the whole nature

of the relationship between the respective parties, and some things, as they were worded in regard to things, could be construed in a number of different ways."

The trial court continued, stating that it was not willing to grant the motion unless it were "clear as a bell *** that there was no reason for" McGrath's denials and that the statements pertained to matters of substantial importance to the case. Then, although acknowledging that Rule 219(b) "doesn't really say" so, the court stated that in order for it to grant the motion for expenses it would need to see that "there was really *** almost an intent to obstruct something or an intent to make someone jump through hoops than what's needed to go through [sic]." McGrath then filed an appeal of the judgment in Botsford's favor, and Botsford filed a cross-appeal of the denial of his Rule 219(b) motion. The appeal was dismissed after McGrath failed to file a brief, leaving only the cross-appeal before us.

On appeal, Botsford argues that the trial court abused its discretion in denying his motion for expenses under Rule 219(b). A trial court's decision regarding the imposition of Rule 219(b) sanctions is a matter within the trial court's discretion and will not be overturned absent an abuse of that discretion. First National Bank of LaGrange v. Lowrey, 375 Ill. App. 3d 181, 218 (2007). A trial court abuses its discretion when its ruling is arbitrary or fanciful or where no reasonable person would take the view adopted by the trial court (People v. Anderson, 367 Ill. App. 3d 653, 664 (2006)), or when its ruling rests on an error of law (Cable America, Inc. v. Pace Electronics, Inc., 396 Ill. App. 3d 15, 24 (2009)).

Here, some aspects of the trial court's ruling reflect a sound understanding of the requirements of Rule 219(b) and the factors relevant to a motion brought under that rule. Rule 219(b) provides in relevant part:

"(b) Expenses on Refusal to Admit. If a party, after being served with a request to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial thereof, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter of fact, the requesting party may apply to the court for an order requiring the other party to pay the requesting party the reasonable expenses incurred in making the proof, including reasonable attorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made." 210 Ill. 2d R. 219(b).

Thus, in order to prevail on a Rule 219(b) motion, the moving party must show: (1) proof of the truth of the matters asserted that were denied by the nonmovant; (2) that the nonmovant lacked good reason to deny the facts asserted; and (3) the materiality to the litigation of the facts as to which admissions were sought. Exchange National Bank of Chicago v. DeGraff, 110 Ill. App. 3d 145, 160 (1982). The movant bears the burden of proving these elements. Mattis v. State Farm Fire & Casualty Co., 118 Ill. App. 3d 612, 624-25 (1983).

The trial court stated that it considered these factors and that it found that, as to some requested admissions, Botsford had not shown that they were substantially important to the litigation, and that McGrath may have had good reason to deny others. Substantial importance and good reason to deny are clearly relevant considerations in determining whether to assess reasonable expenses under the rule. We note, however, that the trial court did not identify which requested admissions it was referring to in connection with any of these findings, making it impossible for us to defer to (or even deduce) its reasoning with respect to any particular requested admission. It is incumbent upon the trial court to make such specific findings because the logical predicate for a reviewing court's deference to the trial court's exercise of its discretion is that the reviewing court is able to

-10-

discern an informed basis for the trial court's decision. Turner Investors v. Pirkl, 338 Ill. App. 3d 676, 682 (2003). Thus, the trial court's failure to make specific findings regarding each requested admission may serve as a reason to reverse and remand. In re Estate of Smith, 201 Ill. App. 3d 1005, 1008 (1990) (trial court's denial of Rule 219(b) expenses reversed and cause remanded because of its failure to make specific findings as to each request to admit).

Ultimately, however, we reverse on a different ground, that the trial court's ruling was an abuse of discretion because it rested on an error of law. Cable America, 396 Ill. App. 3d at 24. Specifically, the trial court erred in imposing additional requirements, beyond those found in Rule 219(b) itself, for the award of reasonable expenses pursuant to that rule. The trial court stated that it would not grant the motion for expenses unless Botsford could show that, in denying all of the statements in the Request, McGrath had "almost an intent to obstruct" or "an intent to make someone jump through hoops" beyond the normal incidents of discovery. However, neither Rule 219(b) nor the rule it was designed to enforce, Supreme Court Rule 216 (134 Ill. 2d R. 216), provides any basis for imposing such an additional "intent to obstruct" requirement.

The purpose of a request to admit pursuant to Supreme Court Rule 216 is to enable the parties and the court to limit the issues and to reduce the unnecessary production of proof at trial. P.R.S. International, Inc. v. Shred Pax Corp., 184 Ill. 2d 224, 237 (1998); People v. Mindham, 253 Ill. App. 3d 792, 797 (1993). A party has a good-faith obligation to make a reasonable effort to secure answers to a request to admit, not only from the facts within its own knowledge but also from persons and documents within its reasonable control. Szczeblewski v. Gossett, 342 Ill. App. 3d 344, 349 (2003). Although a request for admission of a legal conclusion is improper, a request for admission of a factual question that might give rise to a legal conclusion is not improper. Shred Pax, 184 Ill. 2d at 236. Moreover, under the express provisions of Supreme Court Rule 216(c), any

alleged defect in a request for admissions--for example, a failure to define a material term, or an unclear time frame--must be raised by written objection. 134 Ill. 2d R. 216(c). Absent such an objection, the defect is forfeited. Mindham, 253 Ill. App. 3d at 798. As the Illinois Supreme Court has stated, the rules that it has promulgated are not aspirational, are not suggestions, and have the force of law, creating the presumption that the rules will be obeyed and enforced as written. Bright v. Dicke, 166 Ill. 2d 204, 210 (1995).

Thus, a party to whom a request for admissions is propounded has an affirmative obligation under Rule 216 to admit or deny the requested admissions in good faith, or, if a requested admission is improper due to privilege, improper form, or any other reason, to file an objection within the 28 days given for responding. 134 Ill. 2d R. 216(c). Under the plain language of the rules, if a moving party can show that the nonmoving party has not complied with these affirmative obligations, the movant may obtain reasonable expenses under Rule 219(b), regardless of whether the nonmoving party had the "intent to obstruct" the progress of the litigation. The trial court therefore erred in requiring Botsford to show that McGrath had such an intent. We accordingly must reverse its decision and remand for the trial court to reconsider the motion and apply the proper legal analysis. Such an analysis would consider, for each requested admission alleged to have been wrongly denied: (1) whether the movant proved that the denied statement was, in fact, true; (2) whether the nonmovant had good reason (such as a good-faith belief based on some fact within his knowledge) to deny the admission; and (3) whether the fact that would have been established by the requested admission was material to the outcome. DeGraff, 110 Ill. App. 3d at 160.

McGrath argues that we should nevertheless affirm the trial court's ruling as to certain requested admissions (Nos. 3, 4, and 9), because they used the phrase "Laurel Canyon Project" without providing any definition of the term, and so he had "good reason" under Rule 219(b) for

denying them. However, McGrath did not file an objection to the form or content of any of the requested admissions. Instead, he filed sworn denials to all of them. Thus, he has forfeited any objection that could have been raised (Mindham, 253 Ill. App. 3d at 798) and may not now be heard to justify his denials on the basis that a term was not defined or that he did not know what a particular phrase referred to. As a result, he is also precluded from arguing that any such objection constitutes "good reason" for a denial sufficient to avert the penalties imposed by Rule 219(b). Accordingly, we reject McGrath's arguments relating to requested admissions Nos. 3, 4, and 9, to the extent that he asserts that he had good reason to deny them because particular terms in them were not defined. (We also note that the term "Laurel Canyon Project" was in fact defined on the first page of the Request, as "the project of the same name in Plaintiff's Complaint, specifically the procurement and development of approximately 58.9 acres of land at the Hewitt Landfill in North Hollywood, City of Los Angeles, County of Los Angeles, State of California.")

McGrath also argues that he was not required to admit liability or concede his case and that therefore he had good reason to deny all of the requested admissions, as they would have had this effect. In support of this argument, he cites DeGraff, 110 Ill. App. 3d at 162, and Chem-Pac, Inc. v. Simborg, 145 Ill. App. 3d 520, 526 (1986). In DeGraff, the Appellate Court, First District, rejected the defendant's argument that the plaintiff should have admitted several requests, stating:

> "[T]he Bank's admission of these four requests would be conceding away its whole case. Plaintiff's duty to admit facts surely does not extend to accepting defendants' version of [those facts]." DeGraff, 110 Ill. App. 3d at 162.

These statements were echoed in two later First District cases, Simborg and Lowery, 375 Ill. App. 3d at 219. The court in DeGraff did not cite any legal authority in support of these statements, however, nor did the later cases cite any authority outside of the three cases themselves.

We are unable to discern any legal principle that might support this broad assertion that a party need not admit facts if those facts would "concede away its whole case." Indeed, the supreme court's statements in Shred Pax are to the contrary:

"The key question is whether a requested admission deals with a question of fact. Accordingly, requests for legal conclusions are improper; however, requests for admissions of factual questions which might give rise to legal conclusions are not improper. For example, a party's conduct pursuant to a contract, including what actions that party did or did not take, would be a factual question properly included in a request to admit. However, whether that conduct amounts to a material breach is a legal rather than a factual question, and thus is not appropriate for a request to admit." (Emphasis in original.) Shred Pax, 184 Ill. 2d at 236.

Thus, regardless of whether the requested admission concerns an "ultimate" fact that will have the effect of "conceding away" the case, if it concerns a fact and not a legal conclusion, it is proper. Shred Pax, 184 Ill. 2d at 237. We recognized the reach of this holding in Hubeny v. Chairse, 305 Ill. App. 3d 1038, 1044 (1999), stating that "[e]ven if the admission of *** fact plainly requires the fact finder to conclude that a party breached a contract or was negligent as a matter of law, a request for that admission is proper." Accordingly, we reject the argument that a party has "good reason" under Rule 219(b) to deny a requested admission simply because the admission might have the effect of requiring the entry of judgment against it.

In rejecting this argument, we do not mean to suggest that a party must admit facts that it has a good-faith basis to dispute, at the risk of being hit with Rule 219(b) penalties if the fact finder ultimately adopts a contrary view of the facts at trial. In this regard, we are in agreement with the court in DeGraff, which stated:

"If one party unreasonably denies *** facts under oath, the opposing party should be able to recover expenses and fees expended in proving them. If the rule is extended to all controverted matters which become 'proven facts' only through a general verdict or judgment, [however,] the prevailing party to an action would presumably be allowed to recover fees and expenses routinely. We do not believe this is the intent of Supreme Court Rule 219(b)."

DeGraff, 110 Ill. App. 3d at 162.

Thus, if a party has a reasonable basis on which to dispute a fact, it has "good reason" for its denial of that fact in a request to admit. For instance, in a lawsuit over a car accident, a party has good reason to deny that the traffic light was green if it knows of a competent witness who says that the light was red. In such a case, a jury's eventual finding that the light was green would not subject the denying party to the payment of expenses under Rule 219(b). When the trial court in this case reconsiders the Rule 219(b) motion on remand, it may consider any evidence in the record (for instance, McGrath's deposition) as well as its own recollections and impressions formed during trial to determine whether McGrath had a reasonable basis for denying each requested admission.

McGrath lastly argues that we should affirm the trial court's ruling because all of the facts that he was asked to admit were of no substantial importance to the case, and so Rule 219(b) does not require him to pay Botsford's reasonable expenses involved in proving these facts at trial. Even leaving aside the obvious contradiction between this argument and McGrath's previous argument that answering the requested admissions honestly would have required him to "concede his whole case away," we are unable to affirm on this basis because the record is insufficient. As we have noted, although the trial court stated that it believed that some of the requested admissions were of no substantial importance to the case, it did not identify which of the admissions fell into this category. Thus, we are unable to review this aspect of its ruling. The determination of which requested

admissions were material to the case should be made by the trial court, as it is most familiar with the evidence that was relevant to its judgment. On remand, the trial court will be able to consider this factor as it engages in a new consideration of the motion for reasonable expenses.

Accordingly, we reverse and remand for the trial court to reconsider the defendant's motion for reasonable expenses via proceedings consistent with this opinion.

Reversed and remanded with directions.

ZENOFF, P.J., and BURKE, J., concur.