2025 IL App (2d) 240551-U
No. 2-24-0551
Order filed July 30, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| MICHAEL J. GRUDECKI, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 18-L-387 |
| | ) | |
| HAILEY R. YOUNG, | ) | Honorable |
| | ) | Mark A. Pheanis, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not err in denying plaintiff's motion for judgment notwithstanding the verdict, allowing a supplemental opinion and resulting trial testimony by defendant's medical expert, and denying the recovery of attorney fees and costs.

¶ 2   On October 6, 2016, plaintiff, Michael J. Grudecki, was involved in a car crash with defendant, Hailey R. Young.  Plaintiff sued defendant, alleging that her negligence caused his injuries, including a left shoulder injury and lingering headaches from a concussion.  Defendant admitted liability but denied that she was the cause of plaintiff's injuries or that plaintiff was injured to the extent that he claimed.  Following a trial, a Kane County jury found in favor of plaintiff and awarded $26,662.16 for medical expenses and $8,000 for pain and suffering.  The

jury did not award plaintiff the damages that he requested for future pain and suffering, loss of normal life, future loss of normal life, and lost wages. Plaintiff appeals. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    The crash occurred as plaintiff drove to drop his dog off at a kennel in Elgin for the weekend. Plaintiff was rear-ended by defendant while he waited to make a left turn at an intersection. Later that day, plaintiff and his husband drove to Branson, Missouri for a wedding. Plaintiff said that he experienced pain and discomfort in his back, neck, and left shoulder throughout the weekend. He also experienced severe headaches.

¶ 5    After returning from the wedding, plaintiff sought treatment from his primary care physician, Dr. Robert Rivers. Plaintiff told Dr. Rivers that he had pain in his lower right back, head, right hip, left neck, left shoulder, and that he was also having a headache, intermittent dizziness, and some fogginess of thought. He was diagnosed with a concussion and an x-ray was ordered. The x-ray showed abnormalities that may be due to aging or injury. A few years prior to the crash, plaintiff visited Dr. Rivers complaining of symptoms similar to attention-deficit/hyperactivity disorder (ADHD), including difficulty focusing, poor impulse control, and hyperactivity. While plaintiff was prescribed medication to treat ADHD, he was never formally diagnosed with the condition. Additionally, plaintiff only took the medication sparingly when he needed help concentrating.

¶ 6    In a follow-up visit in late October 2016, plaintiff reported that he was feeling better but still had unresolved symptoms. Plaintiff attended physical therapy from November 3, 2016, until February 8, 2017, and from September 11, 2017, until December 14, 2017. Plaintiff also received

several cortisone injections from an orthopedic surgeon, Dr. Christopher Siodlarz, which worked "with mild benefit."

¶ 7     In an August 2017 visit to Dr. Rivers, plaintiff reported that he still had periods of mental fogginess, his left shoulder pain persisted and radiated down his left arm with use, and the range of motion in his left shoulder was decreased and resulted in increased pain and a burning feeling. After several more follow-up visits, plaintiff did not receive any treatment from Dr. Rivers related to the injuries allegedly sustained in the crash between March 2018, and December 2023.

¶ 8     The trial court ordered that all discovery be completed by July 20, 2023. After discovery was completed, plaintiff filed a motion for partial summary judgment as to liability and damages. The trial court granted the motion as to liability based on defendant's admission. However, the trial court denied the motion as to damages because fact issues remained regarding medical expenses and lost wages. In September 2023, plaintiff again moved for partial summary judgment, which the trial court denied for the same reasons.

¶ 9     On December 1, 2023, plaintiff visited Dr. Rivers for a follow-up to "confirm permanency" of his injuries in connection with this lawsuit. On December 21, 2023, plaintiff disclosed to defendant a patient portal record of this visit and a letter from Dr. Rivers. The letter stated that plaintiff's shoulder was "90% normal," a 5% decrease from Dr. Rivers initial opinion disclosed in 2022. Defendant subpoenaed the full medical records from the visit. After receiving the records, defendant learned for the first time that plaintiff suffered injuries in June 2023 after being struck in the face with a medicine ball and falling backward onto his outstretched left hand and hitting his head. Immediately after the incident, plaintiff went to the emergency room because his teeth sliced open his lip and required stitches. Several months later, plaintiff also learned that he had a

scaphoid fracture in his left wrist and likely suffered a concussion. In January 2024, the trial court extended discovery until March 1, 2024.

¶ 10     In response to this new information and updated opinion of Dr. Rivers, defendant offered a supplemental report of her expert, Dr. Guido Marra, on April 24, 2024. Dr. Marra opined that plaintiff suffered no permanent injuries and noted that there was no documented loss of strength or loss of motion in plaintiff's left arm. Further, Dr. Marra opined that the fall from the June 2023 medicine ball incident caused plaintiff's continued left shoulder pain.

¶ 11     Plaintiff moved to strike the supplemental report of Dr. Marra. At the same time, defendant sought leave for an extension of time to supplement Dr. Marra's report under Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011) because discovery was closed. The trial court denied plaintiff's motion to strike and granted defendant leave to supplement Dr. Marra's report. The trial court stated that "Dr. Rivers' new opinions double the percentage of permanent shoulder deficit and fail to indicate any disparity in shoulder weakness bilaterally. These differences afford Defendant the opportunity to respond as she has." Plaintiff conducted an evidence deposition of Dr. Marra in two parts on May 20, 2024, and May 29, 2024. Using Dr. Marra's testimony, plaintiff asked the trial court to reconsider the denial of the motion to strike, claiming that Dr. Marra did not offer a new opinion. The trial court denied the motion to reconsider.

¶ 12     The trial on plaintiff's claims was held between June 3, 2024, and June 6, 2024. At trial, Dr. Rivers testified that plaintiff's injuries to his head, back, and shoulders were a result of the crash. Dr. Rivers said that he believed that plaintiff's post-concussion headaches were permanent, and that plaintiff had a permanent 5% to 10% reduction in the use of his left shoulder due to the crash. He stated that plaintiff would have pain in his shoulder for the rest of his life.

¶ 13    Plaintiff presented the video recorded evidence deposition of Dr. Kishore Santwani, a neurologist who treated plaintiff. During plaintiff's initial visit to Dr. Santwani's office on November 1, 2017, he complained of headaches, disequilibrium, cognitive changes, forgetfulness, mood irritability, and pain. A detailed neurological exam was conducted during this visit. Dr. Santwani stated that "the initial [diagnosis] was the left cervical shoulder and arm pain and numbness into the fourth and fifth digits of the left hand. The second diagnosis was headaches and cognitive changes and mood changes following his auto accident." Plaintiff was prescribed a medication for his headaches and nerve pain. Dr. Santwani also wanted an MRI of the cervical spine (*i.e.* neck) and head to rule out any structural or other metabolic causes of the pain and cognitive dysfunction. He said that the results of the MRI were "fairly common" and "just wear and tear changes" from things such as "daily movement [and] rotation of the neck." He also conducted a nerve conduction study to look for pinched nerves. The results were normal, though Dr. Santwani noted that "it's not a perfect study" and that there are general limitations to it. Despite the normal results, Dr. Santwani believed it was possible that plaintiff suffered an injury to the brachial plexus, the grouping of nerves that run from the neck into the arm and hand, or cervical radiculopathy, a pinched nerve in the neck that radiates into the shoulder or arm. He testified that, as of a February 2018 appointment, plaintiff did not complain of headaches and his concussion symptoms had improved greatly. Dr. Santwani testified that he believed that the cause of plaintiff's injury was the vehicle crash. On cross-examination, Dr. Santwani admitted that he did not know about plaintiff's previous ADHD symptoms. He also did not know about the June 2023 medicine ball incident when plaintiff returned to his office in January 2024 for another medical consultation.

¶ 14    Plaintiff additionally presented the video recorded evidence deposition of Chris Kelly, a physical therapist whose office treated plaintiff.  During the initial evaluation on November 3, 2016, plaintiff complained of "left lower cervical pain with radiating symptoms into his shoulder blade, and also having lower lumbar pain, right greater than left side, with pain that [radiated] into his right flank but not down his legs."  Plaintiff received therapeutic exercises, massages, and stretching during his treatment.  He also had a home exercise program.  Plaintiff was initially discharged on February 8, 2017.  Though he showed some improvement, he did not reach all his goals and was still in pain.  Plaintiff returned to physical therapy in September 2017 and received similar treatment until December 2017.  Plaintiff reported that he reinjured his neck several months earlier while lifting his daughter, who was two years old at the time of the crash.  He was not formally discharged from his second set of treatment because he did not meet his goals.  On cross-examination, Kelly stated that he found no deficits with respect to plaintiff's left shoulder.  He also clarified that, as of the February 2017 discharge, plaintiff had met all his short-term goals and all but two of his long-term goals, which were partially met.  Kelly said that plaintiff presented with slightly different injuries at the second round of treatment than he did at the first.  He could also not say whether injuries treated during the second round of therapy were related to the car crash.  Kelly agreed that plaintiff was not discharged in December 2017 because he did not return to complete his treatment.

¶ 15    Plaintiff testified that, at the time of the crash and his treatment, he worked as a sales manager at a company with offices in Chicago and Schaumburg.  He was required to miss time at work and use his paid time off (PTO) to attend his treatments.  He stated that he often had to miss up to two hours in order to travel from downtown Chicago to the St. Charles area for treatment.  Plaintiff presented a demonstrative exhibit which purported to show the amount of time at work

he missed. Plaintiff determined that his salary of $146,200 per year resulted in an hourly rate of $70.29 per hour. He claimed to have used 131.82 hours of PTO for treatment. Thus, plaintiff requested $9,265.43 in damages for lost wages. He also testified that because of his injuries he struggled to lift his daughter, experienced pain and stiffness when he folds laundry, and could no longer perform certain aspects of his job, such as setting up booths at trade shows. Plaintiff testified that he continued to suffer intermittent headaches and pain in his left shoulder. Plaintiff denied suffering a concussion or hitting his head in June 2023.

¶ 16 Defendant presented the video recorded evidence deposition of Dr. Marra. He testified that he believed that plaintiff did not suffer any permanent injuries and pointed to the lack of test results that could offer objective explanations for plaintiff's subjective experience of pain. Moreover, Dr. Marra testified that Dr. Rivers did not document any loss of strength or motion in plaintiff's shoulder, which are the common tests used to determine loss of use. He stated that he didn't understand why Dr. Rivers would give plaintiff a 10% deficit with full range of motion in his shoulder. He also testified that he believed the June 2023 medicine ball incident could cause pain in plaintiff's left shoulder. However, on cross-examination Dr. Marra admitted that there were no complaints of pain in plaintiff's left shoulder documented in the medical records related to the June 2023 medicine ball incident.

¶ 17 After deliberation, the jury returned a verdict in favor of plaintiff. The jury awarded plaintiff $26,662.16 for medical expenses and $8,000 for pain and suffering. However, the jury did not award plaintiff the damages that he requested for future pain and suffering, loss of normal life, future loss of normal life, and lost wages. Plaintiff thereafter filed a motion for costs under 735 ILCS 5/5-108 (West 2022), a motion for attorney fees and costs under Illinois Supreme Court Rule 219(b) (eff. July 1, 2002), and a motion for judgment notwithstanding the verdict. The trial

court awarded some of the requested statutory costs but denied the motion for attorney fees and the motion for judgment notwithstanding the verdict. Plaintiff timely appealed.

¶ 18                                    II.  ANALYSIS

¶ 19     Plaintiff's first contention on appeal is that the trial court erred in denying his motion for judgment notwithstanding the verdict (judgment *n.o.v.*).  Judgment *n.o.v.* "is properly entered in those limited cases where 'all of the evidence, when viewed in its aspect most favorable to the [nonmovant], so overwhelmingly favors [the] movant that no contrary verdict based on that evidence could ever stand.' "  *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992) (quoting *Pedrick v. Peoria & Eatern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)).  "In ruling on a motion for a judgment *n.o.v.*, a court does not weigh the evidence, nor is it concerned with the credibility of the witnesses; rather it may only consider the evidence, and any inferences therefrom, in the light most favorable to the party resisting the motion."  *Id.*  "The standard for entry of judgment *n.o.v.* is a high one and is not appropriate if 'reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented.' "  *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37 (quoting *York v. Rush–Presbyterian–St. Luke's Medical Center*, 222 Ill.2d 147, 178 (2006)).  "The court has no right to enter a judgment *n.o.v.* if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome."  *Maple*, 151 Ill. 2d at 454.  Our review is *de novo*.  *Lawlor*, 2012 IL 112530, ¶ 37.

¶ 20     Plaintiff argues that he was entitled to judgment *n.o.v.* because the evidence established that he was entitled to damages for future pain and suffering, past and future loss of normal life,

and lost wages. He argues that the jury ignored uncontroverted evidence that established these damages.

¶ 21    " 'The determination of damages is a question reserved to the trier of fact, and a reviewing court will not lightly substitute its opinion for the judgment rendered in the trial court.' " *Doe v. Parrillo*, 2021 IL 126577, ¶ 73 (quoting *Richardson v. Chapman*, 175 Ill. 2d 98, 113 (1997)). "A reviewing court will do so only when the damage award falls outside the range of fair and reasonable compensation, results from passion or prejudice, or shocks the judicial conscience." *Id.* The fairness of compensation must be determined under the circumstances of each suit. *Doe v. Montessori School of Lake Forest*, 287 Ill. App. 3d 289, 300 (1997). "Evidence of future pain and suffering requires a showing that it is reasonably certain to occur in the future." *Maddox v. Rozek*, 265 Ill. App. 3d 1007, 1009 (1994). Damages for loss of normal life are "a component of disability which compensates for a change in the plaintiff's lifestyle." *Stift v. Lizzadro*, 362 Ill. App. 3d 1019, 1028-29 (2005). Evidence of lost wages must be reasonably certain and cannot be based on testimony that is merely speculative, remote, or uncertain. *Stanford v. City of Flora*, 2018 IL App (5th) 160115, ¶ 38.

¶ 22    Plaintiff claims that the evidence establishing damages for future pain and suffering and past and future loss of normal life were uncontroverted. The evidence of those damages was presented by way of plaintiff's own testimony and the testimony of his treating physicians and are premised on plaintiff's subjective experience of pain. Our supreme court has recognized that:

> "A doctor's reliance on his patient's credibility and his acceptance of the patient's history and subjective expressions of pain, for purposes of making a medical diagnosis and rendering medical treatment, is not binding on a jury. *Melecosky* [*v. McCarthy Brothers Co.*, 115 Ill. 2d 209, 216-17 (1986)]. The jury is empowered to make credibility

determinations and must make its own assessment of the patient's veracity, not merely with respect to that person's in-court testimony but also with respect to that person's general credibility to the extent that person's credibility is relevant to the ultimate determination in the case. *Maple*, 151 Ill. 2d at 460; *Melecosky*, 115 Ill. 2d at 216-17 (stating that the jury must decide the weight to be given the opinion of the medical expert that is based upon the patient's subjective statements to the expert); *Moran* [*v. Erickson*, 297 Ill. App. 3d 342, 254 (1998)]; *Aguinaga v. City of Chicago*, 243 Ill. App. 3d 552, 562 (1993) (finding that the expert's testimony is but the opinion of the witness given on facts assumed to be true; it is the function of the trier of fact to determine the facts (citing *Beloit Foundry v. Industrial Comm'n*, 62 Ill. 2d 535, 539 (1976))). Additionally, a defendant is not required to present medical testimony to contradict or discredit the testimony of plaintiff or plaintiff's witnesses. See *Redmond* [*v. Socha*, 216 Ill. 2d 622, 644 (2005)]; *Pecaro v. Baer*, 406 Ill. App. 3d 915, 920-22, (2010). Thus, if the jury finds the plaintiff to be incredible, it can correspondingly disregard the opinions of the medical professional that are based upon information supplied to the professional by the plaintiff. *Moran*, 297 Ill. App. 3d at 353."

*Peach v. McGovern*, 2019 IL 123156, ¶ 55.

¶ 23 Here, by its verdict, it is apparent that the jury did not find plaintiff to be fully credible. It found that plaintiff was injured because of the crash and suffered pain in the immediate aftermath. However, the jury apparently believed that plaintiff's pain from the crash subsided, or his continued pain was caused by something other than the crash. This conclusion is reasonably supported by the testimony presented at trial. As all the testifying doctors recognized, the experience of pain is subjective. Plaintiff testified that his back and shoulder pain mostly improved with physical therapy. He said that the pain rarely reached a ten on a scale of one to ten, that the

pain only occurred a few days a week, and that he could go six to eight weeks without pain. Further, plaintiff testified that the constancy of his headaches resolved not long after the crash and became more "inconsistent." Plaintiff also went five years between treatments for his headaches and shoulder pain. Further, plaintiff's credibility was undermined on cross-examination. For example, he testified that he did not hit his head and did not suffer a concussion after the June 2023 medicine ball incident, despite evidence to the contrary. The jury also could have relied on the testimony of defendant's expert, Dr. Marra, that the medicine ball incident caused plaintiff's continued shoulder pain.

¶ 24 Plaintiff's reliance on *Wiggins v. Bonsack*, 2014 IL App (5th) 130123, is misplaced. In *Wiggins*, the plaintiff was injured following a vehicle crash. *Id.* ¶ 3. After trial, the jury returned a general verdict in favor of the defendant. *Id.* ¶ 13. The plaintiff appealed, arguing that the trial court erred in giving the jury a contributory negligence instruction and because there was evidence that the defendant caused the plaintiff's injuries. *Id.* ¶¶ 20, 22. The appellate court reversed, holding that it was error to instruct the jury on contributory negligence when there was no evidence of contributory negligence. *Id.* ¶ 21. Additionally, the appellate court reversed because there was uncontroverted evidence that the defendant caused the plaintiff's injuries. *Id.* 26. The court noted that the plaintiff presented testimony from her chiropractor, while the defendant presented no medical evidence whatsoever. *Id.* Thus, the court remanded for a new trial as to damages only. *Id.* ¶ 27.

¶ 25 Here, we first note that our supreme court in *Peach*, decided five years after *Wiggins*, stated that "a defendant is not required to present medical testimony to contradict or discredit the testimony of plaintiff or plaintiff's witnesses." *Peach*, 2019 IL 123156, ¶ 55. Nevertheless, defendant presented such evidence. Unlike the defendant in *Wiggins*, defendant here presented

- 11 -

the testimony of a medical expert, Dr. Marra, regarding plaintiff's injuries. Dr. Marra testified that, based on his review of plaintiff's medical records, he believed that plaintiff's pain improved and that plaintiff suffered no limitations in the use of his left shoulder. He also pointed out that there was no objective evidence to support plaintiff's subjective complaints of pain. Further, defendant elicited testimony on cross-examination that undercut plaintiff's damages claims. For example, Dr. Rivers admitted that prior to the crash, plaintiff suffered from cognitive issues, including some of the same cognitive issues claimed because of the crash. Defendant also elicited testimony regarding the June 2023 medicine ball incident and the resultant injuries to plaintiff's wrist, shoulder, and head.

¶ 26    Rather, this case is more similar to *Schonfeld v. Tortorici*, 2024 IL App (1st) 231585-U.[1] In that case, the plaintiff was injured after being struck by the defendant's car while jogging. *Id.* ¶ 5. The plaintiff testified that she had difficulty dressing, carrying a laundry basket, and turning her body while driving immediately after the incident. *Id.* ¶ 6. She said that her arm would get stuck and make a clicking sound, which she demonstrated for the jury. *Id.* At the time of trial, she was unable to run, attend hip hop classes, rock climb, or lift more than 30 pounds, and walking her dog was difficult. *Id.* Further, before the incident, she helped facilitate therapy for individuals at a treatment facility, but afterwards she had to move to a role as a desk social worker. *Id.*

¶ 27    Two of the plaintiff's treating physicians testified that they found weakness and loss of motion in her shoulder and MRIs showed inflammation of the rotator cuff and loss of cartilage.

---

[1] We may rely on the reasoning of a nonprecedential decision under Illinois Supreme Court Rule 23 (eff. June 3, 2025). *Zhao v. State Farm Fire & Casualty Co.*, 2025 IL App (2d) 240723, ¶ 30; *People v. Ingram*, 2020 IL App (2d) 180353, ¶ 21 n.1.

*Id.* ¶ 7. Both also testified that the plaintiff exhibited pain. *Id.* One physician additionally opined that the plaintiff would be a candidate for surgery to repair her rotator cuff if she could no longer tolerate the pain. *Id.* The plaintiff's physical therapist testified that the range of motion in her shoulder improved and she reported that her shoulder pain was "not too bad," but that she was not formally discharged from physical therapy because she did not achieve all her goals. *Id.* ¶ 10.

¶ 28 The plaintiff's roommate and fiancé testified that they knew about the clicking in her shoulder. *Id.* ¶¶ 11-12. The roommate additionally stated that the plaintiff ran less, complained of pain, and occasionally wore a sling. *Id.* ¶ 11. When they moved apartments, they needed to hire movers because the plaintiff had difficulty lifting things. *Id.* The plaintiff's fiancé also testified that he often saw the plaintiff wince and that she lost sleep a few times a week due to pain. *Id.* ¶ 12.

¶ 29 The jury awarded the plaintiff $100,000 in damages, comprising $98,175 for past and future medical expenses and $1,825 for lost salary. *Id.* ¶ 14. However, the jury awarded $0 for loss of normal life and pain and suffering. *Id.* The jury additionally reduced the recoverable damages by 40% for the plaintiff's own negligence, resulting in $60,000 in damages. *Id.*

¶ 30 On appeal, the plaintiff argued that the jury ignored her pain and suffering and loss of her normal life in its verdict. *Id.* ¶ 18. Relying on *Snover v. McGraw*, 172 Ill. 2d 438 (1996), the reviewing court affirmed the jury's verdict. *Schonfeld*, 2024 IL App (1st) 231585-U, ¶ 24. The court noted that the plaintiff's "reported pain and suffering primarily involved subjective symptoms rather than objective findings of injury." *Id.* Although the plaintiff, her roommate, and her fiancé all testified about her experience of pain, "the jury could make its own credibility determinations and reject or accept their testimony." *Id.* ¶ 26. The jury could have also considered the plaintiff's lack of surgery and decision not to return to physical therapy. *Id.* "Therefore, the

lack of objective evidence provided to the jury as to [the plaintiff's] pain and suffering and loss of normal life could support a verdict omitting such damages." *Id.*

¶ 31    Similarly here, there is a lack of objective evidence corroborating plaintiff's experience of pain. Indeed, there is less objective evidence than in *Schonfeld*, as there is no MRI here showing any damage to plaintiff's shoulder. Further, the evidence of pain and suffering and loss of normal life is weaker here than in *Schonfeld*. While the jury in *Schonfeld* heard from the plaintiff's roommate and fiancé regarding the plaintiff's day-to-day pain, plaintiff here presented only his own testimony. Additionally, like the jury in *Schonfeld*, the jury here could have considered plaintiff's decision to stop physical therapy as discrediting his claimed experience of continued pain. We therefore conclude that there was evidence to support the jury's verdict omitting damages for future pain and suffering, and past and future loss of normal life. See *Snover* 172 Ill. 2d at 449 ("In cases in which a plaintiff's evidence of injury is primarily subjective in nature and not accompanied by objective symptoms, the jury may choose to disbelieve the plaintiff's testimony as to pain. In such a circumstance, the jury may reasonably find the plaintiff's evidence of pain and suffering to be unconvincing.").

¶ 32    The jury was similarly entitled to make this credibility determination with respect to the lost wages claim. Plaintiff's lost wages claim was based entirely on his own testimony and a demonstrative spreadsheet that he made summarizing the time he missed work. However, defendant effectively cross-examined plaintiff on the process of tracking the work time missed and the process he used to create the spreadsheet. For example, plaintiff testified that he used billing documents from doctors to help make the spreadsheet. However, plaintiff also testified that his husband handled the finances, billing documents would go directly to his husband, and he rarely saw those documents. Additionally, plaintiff testified that he would have been paid for any unused

PTO, but he never saw the final paycheck from his company that would include (or not) this payout because his husband handled the finances. The spreadsheet also contained 15 hours of "miscellaneous" time that plaintiff testified was not directly related to receiving treatment, but that he "would have to grab different files and sometimes bring them from one appointment to another, or I would have to phone to gather information from doctors." Plaintiff also could not recall exactly when he created the spreadsheet. Thus, the jury's conclusion that plaintiff did not establish his lost wages claim was reasonably supported by the evidence.

¶ 33 While plaintiff is correct that a plaintiff's testimony alone can be sufficient to establish damages for lost wages, it is not without its limitations. Plaintiff cites to *Casey v. Blaseden*, 131 Ill. App. 3d 716, 722 (1985), in support of this proposition. However, the *Casey* court recognized that the plaintiff's testimony must be believed by the jury. *Id.* The court stated: "Plaintiff's testimony regarding her plans to work ***, *if believed by the jury*, was sufficient to meet this test [to establish damages for lost wages]." (Emphasis added.) *Id.* Here, it is apparent that the jury did not believe plaintiff's testimony regarding lost wages. As plaintiff's testimony was the only evidence of lost wages, the jury's credibility determination was fatal to his claim.

¶ 34 Plaintiff's reliance on *Kelly v. Reynolds*, 132 Ill. App. 2d 1098, is similarly misplaced. In *Kelly*, the appellate court reversed an inadequate jury verdict in an automobile collision case and remanded for a new trial as to damages. *Id.* at 1103. The court found that the plaintiff presented uncontroverted evidence supporting his damages claim. *Id.* However, the *Kelly* court recognized that:

> "The testimony surrounding the claimed injuries may have been impeached or it may be contradictory or unreliable. There may be evidence which carries an implication that the injuries have been exaggerated or even feigned or that the medical treatment was either

unnecessary or prolonged. There may be evidence which makes doubtful the necessity of the time alleged to have been missed from work. All of these and like factors must be weighed." *Id.* at 1102.

None of these factors appeared in *Kelly*, as the record did "not reflect a scintilla of impeachment, contradiction, exaggeration, feigned or unnecessary medical treatment." *Id.* Here, contrary to plaintiff's assertions, the record is rife with these factors; there are numerous instances of impeachment, contradiction, or circumstances that may show exaggeration of the injuries. Thus, *Kelly* does not mandate that we reverse.

¶ 35    Finally, plaintiff contends that several evidentiary rulings with respect to Dr. Marra's deposition testimony that was presented to the jury impacted the jury verdict and required judgment *n.o.v.* Though these arguments are perfunctory, underdeveloped, and do not cite supporting authorities in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (see *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented.")), we nevertheless conclude that they are without merit.

¶ 36    First, plaintiff argues that the trial court improperly struck cross-examination testimony *sua sponte* regarding Dr. Marra's work hours, which undercut plaintiff's lost wages claim. The deposition transcript on which the trial court issued its rulings shows that the rulings were in response to objections by defense counsel. The transcript indicates that Dr. Marra testified that his work hours are approximately 7 a.m. until 5 p.m. The stricken portions included repeated attempts to get Dr. Marra to testify that he keeps "banker's hours" from 9 a.m. until 5 p.m., thus necessitating missed work for a patient with an appointment. The stricken testimony also included Dr. Marra stating that individuals working during ordinary working hours could have an

appointment with him when the office opens before ordinary working hours. In our view, this testimony is irrelevant because Dr. Marra did not testify to lost wages and plaintiff's treaters may have had different hours than Dr. Marra.

¶ 37    Next, plaintiff argues that Dr. Marra's testimony regarding the lack of an MRI ordered on plaintiff's shoulder in response to a question by defense counsel should have been stricken because it was not previously disclosed. Dr. Marra testified that because no MRI was ordered on the shoulder, but one was ordered for the spine, the orthopedic surgeon probably felt that there was not a rotator cuff tear causing plaintiff's pain, but rather a spinal issue. Plaintiff's argument is without merit for two reasons. First, this opinion was disclosed in Dr. Marra's discovery deposition. Second, a review of the transcript shows that the question was a follow-up from a question previously asked by plaintiff's counsel. When plaintiff's counsel asked if plaintiff had a rotator cuff injury, Dr. Marra responded, "Well, he has impingement syndrome. There was never an MRI scan to determine the extent of the injury to the rotator cuff, so whether or not he has pathology in the rotator cuff or an injury to the rotator cuff would have to come from an MRI scan." Dr. Marra subsequently stated several times that there was no MRI ordered for plaintiff's shoulder in response to questions from plaintiff's counsel. The record does not show that plaintiff's counsel objected to Dr. Marra's previous mentions of the lack of an MRI of plaintiff's shoulder. We therefore cannot say that the trial court's failure to strike Dr. Marra's opinion in response to the question by defense counsel constituted reversible error.

¶ 38    Plaintiff next argues that the trial court erred in sustaining objections to questions regarding plaintiff not being officially discharged from physical therapy and still being in pain after finishing therapy as asked and answered. However, the transcript shows that this argument is without a basis. Dr. Marra previously testified that there was no discharge summary for the second set of

physical therapy and that plaintiff was "not cured" by the physical therapy. Thus, further testimony regarding this was cumulative.

¶ 39    Lastly, plaintiff takes issue with the trial court sustaining objections related to questions about plaintiff's headaches as being outside the scope of Dr. Marra's expert witness disclosure and direct examination.    While plaintiff is correct that the disclosure report contains the word "headache" seven times, these mentions are part of the background discussion of plaintiff's medical records.  Dr. Marra was not asked to, and did not, give an opinion regarding plaintiff's headaches because he is an orthopedic surgeon and not a neurologist.  As such, any questioning on this in cross-examination was not relevant and outside the scope of direct examination.

¶ 40    Therefore, the trial court did not err in denying plaintiff's motion for judgment *n.o.v.*

¶ 41    Plaintiff's second contention on appeal is that the trial court erred in refusing to strike portions of Dr. Marra's supplemental report and allowing him to testify about new opinions contained in the supplemental report.  We review evidentiary and discovery rulings for abuse of discretion. *Motorola Solutions, Inc. v. Zurich Insurance Co.*, 2015 IL App (1st) 131529, ¶ 138. The trial court abuses its discretion when the ruling "is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Id.*

¶ 42    Rule 213 requires that parties disclose the identity of their witnesses, the subject matter of their witnesses' testimony, the witnesses' conclusions, opinions, and their bases, the witnesses' qualifications, and any reports prepared by the witnesses.  Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2018). The opinions of an expert are limited to what was disclosed in a Rule 213 disclosure or a discovery deposition.  Ill. S. Ct. R. 213(g) (eff. Jan. 1, 2018).  When new or additional information becomes available, the parties have a duty to "seasonably supplement or amend" their disclosures.  Ill. S. Ct. R. 213(i) (eff. Jan. 1, 2018).  Supplemental disclosure is required as soon as the additional

information is known. *Gapinski v. Gujrati*, 2017 IL App (3d) 150502, ¶ 41. An expert witness may elaborate on a previously disclosed opinion as long as it is encompassed by the previous opinion and not a new reason for the opinion. *Id.* In other words, an expert may testify to an opinion that is a "logical corollary" to a previously disclosed opinion. See *Id.*

¶ 43   Plaintiff contends that Dr. Marra's supplemental opinion should have been stricken for three reasons. First, plaintiff argues that the supplemental disclosure was untimely because discovery was closed. Second, plaintiff claims that Dr. Marra's opinion with respect to the permanence of plaintiff's left shoulder injury did not change because of Dr. Rivers' supplemental opinion. Third, plaintiff argues that Dr. Marra's opinion that "[t]here is no loss of strength documented in the left shoulder" is a new opinion that should have been disclosed in Dr. Marra's original disclosure.

¶ 44   Dr. Marra's supplemental opinion was issued after plaintiff visited Dr. Rivers in December 2023 to confirm the permanency of plaintiff's injuries, purportedly to comply with Illinois case law. See, *e.g.*, *Soto v. Gaytan*, 313 Ill. App. 3d 137, 143 (2000) (noting that a treating physician's testimony must be based on a recent examination). During the treatment, Dr. Rivers determined that plaintiff's left shoulder had a 10% loss of use instead of his previous opinion of 5%. The challenged portion of Dr. Marra's supplemental report stated, "There is no loss of strength documented in the left shoulder. Both motion and strength are the primary determinants when evaluating loss of function from an orthopedic perspective." Defendant argues that she was entitled to have Dr. Marra supplement his report as a result of this.

¶ 45   We find *Gapinski* instructive. There, the plaintiff sued the defendant doctor for wrongful death after the defendant doctor allegedly misdiagnosed the plaintiff's husband with a benign brain tumor instead of a malignant renal cell carcinoma. 2017 IL App (3d) 150502, ¶¶ 3-5. During

discovery, defendant sought to test recuts of the decedent's biopsy. *Id.* ¶ 9. The trial court allowed the testing of the recuts and gave additional time for defendant to supplement its expert disclosure regarding the testing of the recuts. *Id.* ¶ 9. The defendant, however, did not disclose any expert witnesses based on the evaluation of the recuts. *Id.* One month after the defendant's expert disclosure was due, the plaintiff filed a "rebuttal" expert disclosure regarding the recuts. *Id.* ¶ 10. The defendant moved to bar this disclosure, while the plaintiff moved to allow the disclosure. *Id.* The trial court denied defendant's motion and granted the plaintiff's motion. *Id.*

¶ 46 On appeal, the defendant argued that the expert's disclosure was untimely and his subsequent trial testimony regarding that disclosure was improper. *Id.* ¶ 40. The appellate court determined that the trial court did not abuse its discretion in allowing the supplemental disclosure and resulting testimony. *Id.* ¶ 42. It considered that the defendant opened the door by asking for the recuts and the trial court's order allowing the recuts contemplated a supplemental disclosure by the plaintiff. *Id.* Further, the court noted that Rule 213 required the plaintiff to "seasonably supplement" the disclosures after the expert evaluated the recuts. *Id.* Thus, it concluded that there was no surprise or prejudice to the defendant. *Id.*

¶ 47 Here, plaintiff opened the door to a supplemental disclosure by having Dr. Rivers reevaluate him and issue a new opinion. Based on this change in opinion—however slight it may seem—and late disclosure of the June 2023 medicine ball incident, defendant was properly afforded the opportunity to supplement her expert opinion. Further, Dr. Marra testified during his discovery deposition that motion and strength are determinants of a permanency from an orthopedic perspective, and that there was no loss of strength in plaintiff's left arm documented in plaintiff's medical records.. Thus, that opinion was previously disclosed and was not new (see Ill. S. Ct. R. 213(g) (eff. Jan. 1, 2018) (noting that trial testimony of an expert is limited to information

disclosed in response to a Rule 213(f) interrogatory or in a discovery deposition)) but rather restating it for purposes of responding to Dr. Rivers's new opinion. As the trial court noted, "Had Dr. Rivers simply stated in his record, letter and supplemental deposition that all of his opinions provided in his original report were unchanged there would be little basis to allow Dr. Marra to update his opinions. ([E]xcept in regards to the shoulder complaints from the undisclosed fall and fractured wrist)." We agree. Under these circumstances, we do not believe the trial court abused its discretion in allowing Dr. Marra's supplemental opinion and resulting testimony.

¶ 48    Plaintiff's final contention on appeal is that the trial court erred in not awarding him attorney fees and costs under Illinois Supreme Court Rule 219(b) (eff. July 1, 2002). Rule 219(b) allows for a party to recover the reasonable expenses incurred to prove a fact that was wrongfully denied in a request to admit. *Id.* The party seeking fees must show: (1) proof of the truth of the matters asserted that were denied; (2) the lack of good reason to deny the facts asserted; and (3) the materiality to the litigation of the facts as to which admissions were sought. *McGrath v. Botsford*, 405 Ill. App. 3d 781, 789 (2010). The party seeking fees bears the burden of proving these elements. *Id.* We review a trial court's order granting or denying fees under Rule 219(b) for abuse of discretion. *Id.*

¶ 49    The parties contest the second element. Plaintiff argues that defendant denied in bad faith that the medical expenses incurred by plaintiff were reasonable and caused by defendant. Specifically, plaintiff contests defendant's denial of request to admit that "[p]laintiff incurred a total of $26,662.16 in fair and reasonable medical expenses as a result of and caused by the accident of October 6, 2016." The trial court denied the motion because "Plaintiff's complaints of injury, disability and permanency underlying that treatment were multitudinous and severe, but

were effectively cross-examined and diminished by the Defense. Defendant had good reason to argue that the medical treatment was likewise unnecessarily overbroad."

¶ 50    The record shows that defendant had a good faith basis for denying this request to admit. Throughout the litigation, plaintiff claimed injuries outside just the left shoulder and headaches. For example, plaintiff claimed the crash was the cause of injuries to the neck and back, as well as memory loss, increased irritability and anxiety.  One of plaintiff's treating physicians, orthopedic surgeon Dr. Siodlarz, testified at his discovery depositions that he could not determine to a reasonable degree of medical certainty that plaintiff's injuries were caused by the crash.  (Dr. Siodlarz did not testify at trial.)  Kelly also testified that plaintiff's injuries during the first and second sets of physical therapy were slightly different, and he could not determine whether the injuries treated during the second set were related to the crash.  Further, there is evidence that could support a determination that plaintiff's cognitive issues were caused by another condition because plaintiff was suffering from symptoms consistent with ADHD prior to the crash.  Finally, Dr. Santwani testified that blood work that he ordered was not related to the crash, but to plaintiff's cholesterol status that was causing white spots to appear on plaintiff's brain MRI.  Thus, there was a reasonable basis for defendant to deny that *all* injuries, treatment, and medical expenses were related to the crash and the trial court did not abuse its discretion in denying to impose sanctions.

¶ 51                              III.  CONCLUSION

¶ 52    For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 53    Affirmed.